[No. 5767.]

## Town of Sterling v. Hurd.

Contracts — Building Contracts — Construction — A building contract provides for the appointment of an overseer of the work on behalf of the owner. His acceptance of the work as it progresses will not bind the owner in the absence of express words in the contract to this effect.—Pp. 443-445.

*Appeal from Logan County District Court.*
*Hon. E. E. Armour, Judge.*

Messrs. Allen & Webster, for appellant.

Mr. W. S. Morris, for appellee.

Mr. Justice Gabbert delivered the opinion of the court.

Appellee Hurd and the appellant, the town of Sterling, entered into a contract whereby the former agreed to construct a system of water works for the

purpose of supplying the inhabitants of the town with water for domestic, fire and other purposes. Hurd was to furnish all the materials and perform all the work necessary to complete the system. The contract contemplated the building of a reservoir, the construction of a wooden pipeline about six miles in length, a distributing system within the corporate limits of the town, and the installation of an auxiliary fire pump for the purpose of increasing the pressure when the occasion demanded. When the system was completed, the town refused to accept it, because it had not been constructed in accordance with the terms and conditions of the contract. Hurd brought suit to recover the balance claimed to be due him, alleging in his complaint that he had completed the construction of the system according to his contract. The town answered, that the wooden pipeline was laid and constructed in such a negligent and unskillful manner as to permit the water to escape and leak in large quantities, and that the system had been constructed in such a negligent, careless and unworkmanlike manner that the pipeline was frequently broken, and the leakage was so great as to render it almost useless, and that because of these defects the pumping system could not be used for fire protection, and that in order to overcome the defective conditions of the system resulting from the negligence of the plaintiff in constructing it, it would have to be relaid and reconstructed, to the damage of the town in the sum of twenty-five thousand dollars. To this answer the plaintiff filed a replication denying its averments.

At the conclusion of the testimony the court withdrew the counterclaim of the defendant for damages from the consideration of the jury, evidently upon the ground that according to the contract entered into between the parties, and the testimony,

the town had waived its right to litigate the questions of alleged imperfections in the system.   There was a verdict and judgment for the plaintiff,. from which the defendant appeals.

The contract between the parties provided that the plaintiff was to furnish all the materials and perform all the labor necessary to construct a waterworks system for the town in accordance with specifications which were attached to and declared and accepted as a part of the agreement.   Among other provisions, it contained the following, as paragraph 9:

"The said engineer herein mentioned and referred to is understood to be an engineer to be appointed by the said town of Sterling, whose particular business shall be to see that the said contractor performs the work of constructing and erecting said water works according to the terms of said contract and the plans and specifications hereto attached, with reference to the labor as well as to the material furnished and used in the construction and erection of said water-works system."

The specifications above referred to contained the following clauses:

"1.   In the following specifications, wherever the words 'town' and 'engineer' are used, they refer respectively to the town of Sterling, Colorado, and to the engineer appointed by said town as its representative.

"5.   All materials are to be the best of their respective kinds, and new and unused when installed, and all workmanship shall be thorough and first-class, and both material and workmanship shall be subject to the inspection and approval of the engineer.   The engineer shall have full power to reject all materials not conforming to the plans and specifications, and all unsound or defective work so re-

jected shall be replaced by the contractor at his own expense immediately upon receiving written notice to do so.  *   *   *

"12. The work shall be completed within the time specified hereafter. If in entire accordance with these specifications, it will then be accepted. If not in accordance with these specifications, the contractor must take immediate steps to rectify any defect at his own expense, and at such time as is most convenient to the town.

"14. The contractor shall be responsible for the entire work as a whole until it is accepted by the town, and he will under no consideration be released from responsibility for any part of the work until such time as the plant is accepted.

"20. When the contract is completed the system will be tested by the engineer. If this test shows the system to be in entire accordance with these specifications, the balance of the amount of the contract price will be paid to the contractor by the town."

The specifications provided in detail with respect to the staves of which the wooden pipeline was to be constructed; the size and material of the pipe bands, and the spacing of the latter, which should be sufficiently close to render the pipe perfectly watertight. The specifications also provided that the contractor should build the foundation for, and install the auxiliary fire pump, and connect it with the system.

On behalf of the plaintiff the testimony was to the effect that the materials employed in the construction of the system and the work performed in constructing it conformed to the standard required by the contract and specifications, and, generally, that the system was properly constructed and in good condition. There was also testimony on the part of

the plaintiff to the effect that during the progress of the work an engineer for the town was present when the wooden pipeline was being constructed, with the exception of about 1,500 feet; that the engineer found no fault with the pipeline, and seemed to be perfectly satisfied; that he inspected the material before and after the pipeline was constructed and accepted the pipe after it was constructed.

On behalf of the town the testimony was to the effect that an engineer representing it overlooked the construction of the pipeline and the distributing system through the town; that he called the attention of the contractor to the fact that building the pipe on the top of the trench which was dug to receive it, and then lowering it when assembled, caused the joints and sections of which it was composed to open, because it did not have sufficient tensile strength to hold together when being lowered; that the contractor agreed to close the joints which had been separated, and to see that the rest were butted squarely together. It also appears from the testimony that on a certain date the contractor notified the engineer that he would quit work for something like six weeks, but that he resumed work within a week, and that about 1,500 feet of the pipeline was laid and covered when the engineer for the town was not present. There was also testimony on behalf of the defendant to the effect that the pipeline leaked continuously from the time the water was turned in; that the staves were not properly butted together; that the bands intended to hold them together frequently broke; and that the construction of the line was so imperfect that it required a number of men practically all the time looking after the leaks; that this condition had existed for a year, and notwithstanding repairs were being made from time to time by the town, yet at the time of the trial, under the gravity

pressure, the loss of water by reason of leaks in the pipe was so great that with 175,000 gallons entering it, only about 9,000 gallons passed through the lower end.    There was also testimony to the effect that the foundation of the fire pump was constructed in such a careless and negligent manner, and the connections therewith from the pipeline so unskillfully installed, that the pump could not be, and had never been, used to test the distributing system in the town, and that for this reason no fire protection was afforded.

The engineer for the town, who was present during most of the time when the work of construction was going on, testified that he called the plaintiff's attention to the defect in not properly butting the joints; that plaintiff promised to remedy this defect, and that during the progress of the work the plaintiff attempted to get acceptances of it as it went along, which were refused.

The contention of counsel for the town is that the court, by taking from the consideration of the jury the question of the noncompliance of plaintiff with his contract and the damages to the town as the result thereof, invaded the province of the jury by, in effect, deciding on conflicting testimony that the provisions of the contract had, in fact, been waived by the engineer for the town, and also erred in holding that under the provisions of the contract, the engineer had the power to waive such provisions, and thereby bind the defendant.    The contention of counsel for the plaintiff is succinctly stated in his brief as follows:

"The claim of the appellee is that the execution of the contract having been performed under the immediate direction, inspection and supervision of the superintending engineer, who was clothed with absolute authority in the matter, the town of Sterling cannot be heard to complain that the contract was

not properly executed, in the absence of fraud on the part of the superintending engineer, or such gross mistakes by him as to imply bad faith.''

In support of this claim counsel for plaintiff urges that the contract entered into between the parties, and particularly paragraph 9 above referred to, clothed the engineer with power to determine as the work progressed whether or not the materials employed and the work performed was in accordance with the terms of the contract, and having inspected and passed the work, the town is precluded from showing that the plaintiff did not comply with his contract. Even if the contract would bear the construction that acceptance by the engineer would bind the town, the testimony was such that the question of whether the engineer had, in fact, accepted the work, or that by his action the town had waived the right to have determined the alleged defects in the system, should have been submitted to the jury. According to the testimony of the engineer, he did object to the manner the pipeline was being laid, and to the way the parts were being assembled. He testifies that during the progress of the work, the contractor attempted to get acceptances of it as it went along, which were refused. It appears that some 1,500 feet was constructed and laid when he was not present, under circumstances which excused his absence. There is also testimony to the effect that the pipeline and pumping station are exceedingly imperfect, to the great damage of the town. So that, even if the contract was susceptible of the construction contended for by counsel for plaintiff, it is apparent that the court erred in not submitting to the jury the question of waiver on the part of the town, and the damages which it claimed to have sustained because plaintiff did not comply with his contract. The contract, however, will not bear the con-

struction contended for by counsel for plaintiff, and we prefer to base our decision upon what we think is a correct interpretation of the agreement between the parties.

As before stated, paragraph 9 of the contract above quoted appears to be relied upon principally by counsel for plaintiff in support of his. claim that the engineer for the town had the authority to accept the work as it progressed, and determine whether or not the system was being constructed in accordance with the provisions of the specifications. In construing a contract it must be considered as a whole, and not merely in detached parts.—9 Cyc. 579. Where parties to a contract have agreed upon an arbiter to determine the quality of work done or materials furnished, and have stipulated that the determination of such arbiter shall be conclusive upon them, they are bound by such determination in the absence of fraud or mistake. But the contract in question makes no such provision. It does not provide either expressly or by implication that the action of the engineer in deciding whether the materials furnished or the work done was or was not in compliance with the contract, should be binding upon the parties to the agreement. The materials and work were to be of a specified standard, and the engineer had no authority to accept any materials or work which did not come up to this standard. His authority in this respect was limited, and even though he had accepted the work as it progressed (which is controverted), the contractor was bound to know from the language of the contract that he had no authority to accept the system on behalf of the town unless it was constructed substantially in accordance with the specifications. In other words, the authority of the engineer was prescribed by the contract and the plaintiff was charged with notice

that any action by the engineer beyond the authority thus conferred would not bind the town.—*U. S. v. Walsh,* 115 Fed. 697; 6 Cyc. 29; *Cannon v. Hunt,* 113 Ga. 501.

It will be observed that the contract does not authorize the engineer to accept the system or any part of it. On the contrary, it expressly provides that plaintiff should be responsible for the work as a whole until accepted by the town; that he would not be released from responsibility for any part of the work until the plant was accepted; that the system was to be completed within a specified time, and if constructed in accordance with the specifications, it would then be accepted; and that when completed it should be tested by the engineer, and if such test disclosed that it had been constructed according to contract, the balance of the contract price would then be paid. Neither is it susceptible of the interpretation contended for by counsel for appellee, that the town, through its engineer, thereby reserved the right to control and direct the construction of the system. So it is clear from the contract and specifications that no acceptance of the system, in whole or in part, by any one, was to be regarded as binding until tested after completion. Construing the contract as a whole, it is apparent that its prime purpose was to secure the construction of a system of a specified standard, both as to materials and workmanship, and the provisions that the engineer should see that the contractor performed the work of constructing the system according to the plans and specifications with reference to the labor, as well as the materials furnished, and should have power to reject all materials not conforming to the specifications, were merely precautions on the part of the town, to insure a compliance with the contract.—*Glacius v. Black,* 50 N. Y. 145; *Lewis v. Yagel,* 77 Hun. 337; 30 Ency. 1243.

We also hold that in construing building contracts which provide for the appointment of some one to oversee the work on behalf of the owner, the acceptance by such appointee of the work of construction as it progresses is not conclusive upon the owner in the absence of plain language in the contract to that effect.—*Mercantile Trust Co. v. Hensey,* 205 U. S. 298; see, also, 9 Current Law 433.

In this connection we call attention to the following appearing in paragraph 3 of the specifications: "Should any difference appear between the drawings and specifications, the engineer shall decide which to follow, and his decision shall be *final,* and shall not entail any additional cost or charge"; thus showing that the parties to the contract had clearly in mind what action on the part of the engineer in exercising the authority conferred upon him was to be final and conclusive, and what not.

There is no repugnancy between paragraph 9 of the contract and the specifications, as claimed by counsel for the appellee. On the other hand, they are entirely harmonious. The contractor agreed to construct a water-works system of a specified standard, and the town only sought to protect itself from defective work by providing that the engineer should oversee the work as it progressed.

The error committed by the trial court was the result of assuming that the town, by taking the precautions it did under the provisions of the contract to safeguard its interests, and employing an engineer with the authority thereby conferred, was precluded from litigating the question of the noncompliance of the plaintiff with his contract after the system was completed. The acceptance by the engineer or his acquiescence as the work progressed, if the evidence should establish this to be the case, could not be regarded as anything more than important evidential

facts tending to prove that the work and materials complied with the contract; but they would not be of controlling effect, and would not deprive the town of its right of action for a breach of the contract in material and substantial particulars.—*U. S. v. Walsh, supra.*

We have recently decided, in *Empson Packing Co. v. Clawson*, 43 Colo. 188, that where parties to a contract designate one who is authorized to determine questions relating to the execution of the contract, and stipulate that his determination shall be final and conclusive, both parties are conclusively bound by his determination of such matter, except in case of fraud or gross mistake, implying bad faith or failure to exercise an honest judgment; and in support of that conclusion cited several of the authorities relied upon by counsel for plaintiff in support of his contention, that the action of the engineer in accepting the work as it progressed was binding upon the town; but, as we have pointed out, that proposition is not involved in this case, for the reason that the contract between the parties does not provide that the engineer shall be an arbiter to determine whether or not there has been a compliance with the contract.

Counsel for the plaintiff appears to place great reliance on *Lampson v. City of Marshall*, 95 N. W. 78, and *Seibert v. Roth, ibid.* 119. An analysis of these cases discloses that they are entirely in harmony with our conclusion. In the first case it was held that the engineer for the town had the right, under the contract between the parties, to direct that the provision prohibiting the contractor from laying the sewer pipe in water, might be disregarded; but this conclusion was reached because the contract vested the engineer with this authority. It will be noticed, however, from the opinion elsewhere, that

notwithstanding the engineer was clothed with the authority indicated, his mere assent to a departure from the contract, or permitting the contractor to put down sewer pipe, cover it up, and then pass it as satisfactory, did not bind the city. In the *Seibert case* it was held that defects of material or work may be waived by the engineer when that power is reserved in the contract.

With respect to other authorities cited by counsel for the plaintiff, we think it is sufficient to state that they involved contracts which contained provisions so worded that the action of the engineer or supervising architect in accepting the work, or in failing to promptly object to the manner it was being performed, was binding upon the owner. The contract under consideration will not bear such a construction, and hence, these authorities are not applicable. The plaintiff, by his contract, was legally bound to construct the water-works system for the town in substantial compliance with the specifications. The town has the right to insist that he shall comply with this contract in these respects. If he has not done so, he must bear the consequences.

We express no opinion as to the weight of the testimony bearing on the issues made by the pleadings, nor what facts the testimony established; but hold that, on the record before us, the question of whether or not the contractor had substantially complied with his contract, and, if not, what damages the town had sustained because of his failure so to do, should have been submitted to the jury, under appropriate instructions.

The judgment of the district court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*

Mr. JUSTICE CAMPBELL and Mr. JUSTICE BAILEY concur.