Gloria NAPPER, Petitioner,

v.

Betty Jo SCHMEH, formerly known as Betty Jo Napper, Respondent.

No. 87SC390.

Supreme Court of Colorado,
En Banc.

April 17, 1989.

Shade, Doyle, Klein, Otis & Frey Roger A. Klein Greeley, for petitioner.

Dinner, Hellerich and Lazar, Thomas E. Hellerich, Charles J. Connell, Greeley, for respondent.

ERICKSON, Justice.

The petitioner, Gloria Napper, as surviving spouse of the insured, petitioned for certiorari to review the court of appeals decision in *National Western Life Insurance Co. v. Schmeh,* 749 P.2d 974 (Colo. App.1987), which reversed the trial court and held that life insurance benefits were payable to insured's ex-spouse and not to his estate. Under the circumstances in this case, the life insurance proceeds are part of the decedent's estate and are payable to the petitioner as the sole surviving heir of the insured. Accordingly, we reverse and remand to the court of appeals with directions to reinstate the trial court's judgment.

I.

This case began as an interpleader action by National Western Life Insurance Company to determine whether it should pay the proceeds of a life insurance policy either to the insured's ex-wife or to his estate. In 1963, the decedent, Dr. Robert S. Napper, purchased a $60,000 life insurance policy from the Hamilton Life Insurance Company (Hamilton) which named respondent Betty Jo Schmeh, who was then Napper's wife, as beneficiary. In April 1973, the Nappers were separated. They entered into a separation agreement which stated, in part, that the agreement was a complete settlement of all property rights and claims of one party against the other, and that:

> Each of the parties will maintain his or her present life insurance policies, and will retain the present beneficiaries on the said policies until a final decree of dissolution is entered in this matter. Upon entry of final decree of dissolution each of the parties will be sole and only owners of their respective life insurance policies, and each waives any interest in said policies. Each party shall be free to change beneficiaries on said policies.

A final dissolution decree, which incorporated the separation agreement, was entered on September 4, 1973.

On October 15, 1973, Dr. Napper wrote a letter to Hamilton stating: "I am no longer married and want the beneficiary of this policy changed from Betty Jo Napper to Mrs. Harry E. Napper [Dr. Napper's mother]." In response to this letter, Hamilton sent Dr. Napper a letter on October 23, 1973, stating "[i]n order that we may make the change of beneficiary you requested, please complete the enclosed Change of Beneficiary form and return it to us along with the contract itself."[1] It is undisputed that neither the form nor the policy was returned to Hamilton and that Hamilton did not in fact change the designated beneficiary from the respondent to Mrs. Harry E. Napper.

In May 1977, Dr. Napper's mother died. In August 1983, Dr. Napper married the petitioner, Gloria Napper. Less than a year after his marriage, Dr. Napper died intestate, leaving Gloria Napper as his sole surviving heir. The IntraWest Bank of Greeley, N.A. was appointed as the personal representative of the estate upon Dr. Napper's death.

Both Betty Jo Schmeh and IntraWest asserted claims against National Western Life Insurance Company, successor in interest to Hamilton National by virtue of a merger, for the $60,000 proceeds from Dr. Napper's policy. Schmeh claimed as the designated beneficiary in the policy. IntraWest claimed that the estate, and consequently Napper, was the beneficiary by virtue of intestate succession.[2] It argued that the dissolution decree dissolving Dr. Napper's marriage with the respondent, coupled with Dr. Napper's letter to Hamilton, terminated any interest or expectancy the respondent might have had in the insurance policy. National Western filed an interpleader action against the respondent and IntraWest with the Weld County District Court to determine to whom it should pay the policy proceeds. IntraWest irrevocably assigned all right, title, and interest in the claim to Gloria Napper, who was accordingly substituted in place of IntraWest.

Trial was to the court, at the conclusion of which the trial judge, construing together the separation agreement and letter directing Hamilton to change beneficiaries, found that Dr. Napper manifested sufficient intent to substitute beneficiaries and to terminate Schmeh's interest in the policy. The trial court noted that the separation agreement alone would have supported its conclusion had it not been for paragraph 6 of the agreement which stated that "each party shall be free to change beneficiaries." Given the existence of this paragraph, the court stated that a further showing of the intent to change beneficiaries was required, and that showing was made by the letter from Dr. Napper to Hamilton.

The court of appeals reversed. It stated that as a general rule of law a change of beneficiary can be accomplished only in the manner specified in the insurance contract. *National Western Life Ins. Co. v. Schmeh*, 749 P.2d at 975. The court noted, however, that under the exceptions found in *Fox v. Hawkins*, 140 Colo. 438, 344 P.2d 973 (1959), and *Finnerty v. Cook*, 118 Colo. 310, 195 P.2d 973 (1948), if a party has substantially complied with the contract provisions by doing all that is "within his power" to effectuate the change, the court will hold that there has been an equitable substitution of beneficiary. *National Western Life Ins. Co. v. Schmeh*, 749 P.2d at 975. The court of appeals stated that since Dr. Napper did not sign and return

1. Petitioner contends that Dr. Napper never received the Hamilton letter. Whether this contention has merit is irrelevant, since the insurance contract expressly provided that in order to change beneficiaries, the policy holder had to file a "written request therefor at the Home Office of the Company on forms satisfactory to the Company, accompanied by this policy for suitable endorsement. Such change shall take effect only upon endorsement thereof on the policy by the Company at its Home Office." Thus the Hamilton letter merely reiterated the procedure for changing beneficiaries already contained in the policy.

2. Under the Colorado Probate Code, sections 15-10-101 to 15-17-101, 6B C.R.S. (1987 & 1988 Supp.), the intestate share of the surviving spouse is the entire intestate estate if there are no surviving issue of the decedent. § 15-11-102(1)(a), 6B C.R.S. (1987).

the form sent from Hamilton, he did not comply in the manner specified in the contract. Napper's failure to submit the insurance contract to the insurance company for endorsement of the change of beneficiaries was cited as evidence that he did not do all that was within his power to substitute beneficiaries. Consequently, the petitioner could not invoke the equitable substitution doctrine.

The court of appeals also stated that the trial court's finding that the separation agreement terminated Schmeh's interest as the named beneficiary in the policy was error. While the court agreed that the provision in the separation agreement that "each waives any interest in said policy," extinguished any ownership interest Schmeh had in the policy, it did not affect "her status as beneficiary under the policy." *Id.* at 976. Since the separation agreement did not contain a "reservation or disclaimer" of Schmeh's expectancy in the policy, the court of appeals concluded that the agreement did not terminate her interest as a beneficiary. *Id.* Accordingly, the court of appeals ordered that the policy proceeds be paid to Betty Jo Schmeh as the named beneficiary in the policy.

## II.

We granted certiorari on two issues: Whether the respondent waived her interest as a beneficiary by entering into the separation agreement and whether Dr. Napper had substantially complied with the policy terms governing substitution of beneficiaries.

## A.

■ In general, a separation agreement in and of itself does not divest one spouse of his or her rights as a beneficiary under a life insurance policy purchased by the other. *See In re Estate of McEndaffer,* 192 Colo. 431, 560 P.2d 87 (1977); *Mullenax v. National Western Reserve Life Ins. Co.,* 29 Colo.App. 418, 485 P.2d 137 (1971); *see also* 4 G. Couch, *Cyclopedia of Insurance Law* § 27:112 (2d ed. Supp.1987).[3] Rather, the agreement must be interpreted to ascertain the intent of the parties as manifested by the written terms of the agreement, and the intent determines whether the spouse takes as a beneficiary. *Charles Ilfeld Co. v. Taylor,* 156 Colo. 204, 397 P.2d 748 (1964); *Mullenax,* 29 Colo.App. 418, 485 P.2d 137 (1971). The issue of what are sufficient indicia of intent to find that a spouse has relinquished his or her expectancy as a beneficiary has been previously addressed in *Mullenax,* 29 Colo.App. 418, 485 P.2d 137, and *McEndaffer,* 192 Colo. 431, 560 P.2d 87 (1977). These two cases are useful inasmuch as they illustrate what type of language contained in a separation agreement will support a finding that the parties intended that a spouse waive his or her expectancy as a beneficiary.

Although reaching a different result, *Mullenax* is not inconsistent with *McEndaffer* or with our decision in this case. In *Mullenax,* a husband and wife entered into a separation agreement stating that the wife conveyed to the husband "all of her right, title and interest in and to any and all other property presently standing in the name of the husband...." *Mullenax,* 29 Colo.App. at 420, 485 P.2d at 138. Among the couple's property at the time of separation was a life insurance policy on the husband's life which named the wife as the

---

**3.** The general rule that a separation agreement does not automatically extinguish a spouse's interest as beneficiary arises from the recognition that there are two distinct property interests in a life insurance policy: (1) the policy owner's interest, which is a control interest and includes the power to name and change beneficiaries and to surrender the policy for its cash value, and (2) the interest of the named beneficiary to the proceeds of the policy. The former is an interest in the policy itself, the latter an expectancy in the proceeds thereof. Because the spouse designated as beneficiary has at the time of the divorce only an expectancy in the proceeds, but not an interest to convey or relinquish, the divorce decree does not extinguish the expectancy as beneficiary. *See Mullenax v. National Reserve Life Insurance Co.,* 29 Colo. App. 418, 485 P.2d 137 (1971); *O'Toole v. Central Laborers' Pension and Welfare Funds,* 12 Ill.App.3d 995, 299 N.E.2d 392 (1973); *Prudential Insurance Co. v. Weatherford,* 49 Or.App. 835, 621 P.2d 83 (1980). Whether the beneficiary's interest is a mere expectancy or a more substantial interest, it has been held that either may be disposed of by a separation agreement if the parties so intended. *See Sorensen v. Nelson,* 342 N.W.2d 477 (Iowa 1984).

primary beneficiary. The husband's father and mother-in-law were designated as secondary beneficiaries in the event the wife predeceased the husband. The trial court held that the secondary beneficiaries were entitled to the policy's proceeds because the wife had released all of her rights to the policy. The court of appeals reversed.

The court of appeals stated that by conveying "all of her 'right, title and interest in and to any and all property' held by the husband," the wife relinquished "any interest in the property to which she might have had a legitimate claim or interest." *Id.* at 423–24, 485 P.2d at 139. She did not, however, relinquish her claim to the insurance proceeds because at the time of the separation she "had no present interest in this policy, only a mere expectancy." *Id.* at 424, 485 P.2d at 139. As such, the agreement only divested the wife of the interest she held in the policy, not any expectancies she might have had. The court of appeals also noted that although the wife could have renounced or disclaimed her expectancy, she did not do so in the separation agreement. *Id.* at 424, 485 P.2d at 139–40. Absent an express renunciation of her expectancy in the policy, the court held that the separation agreement could not be construed to bar the wife from taking as a beneficiary under the policy. *Id.* at 424, 485 P.2d at 140.

Six years later we sharply distinguished the *Mullenax* decision in *In re Estate of McEndaffer*, 192 Colo. 431, 560 P.2d 87 (1977). In *McEndaffer*, a married couple signed a separation agreement providing in part that "each of the parties hereto will, and does hereby, waive any and all claims of every kind or nature in and to the monies, real and personal property, and other assets of every kind or nature that might be due to either from the other." At the time of the agreement, the husband had thirteen life insurance policies providing $92,500 worth of coverage which named his wife as beneficiary. It was agreed as part of the separation agreement that the husband would maintain $6,000 worth of life insurance coverage with his wife as beneficiary for each year until she reached the age of 62. In turn, she agreed to reassign

$6,000 of the insurance to him each year on her birthday. None of this was actually done. Instead, the wife remained as named beneficiary of the thirteen policies.

After the divorce, the husband remarried but did not change the designated beneficiary of the thirteen policies. Upon his death, the ex-wife claimed that because she was still named as the beneficiary in all the policies, she was entitled to the policies' entire proceeds. The trial court disagreed, finding that the parties intended to waive all rights to each other's property, including any expectancy one spouse might have as beneficiary of a life insurance policy carried by the other spouse. The court of appeals reversed, reasoning that under *Mullenax v. National Reserve Life Insurance Co.*, 29 Colo.App. 418, 485 P.2d 137, the settlement agreement did not constitute a release of the wife's expectancy in the policy because it did not contain an express waiver of her right to take as the named beneficiary. We reversed the court of appeals.

We first distinguished *Mullenax* on the ground that its separation agreement was substantially narrower than the one involved in *McEndaffer*. To construe the *McEndaffer* agreement, which covered "all of the property rights" and "all claims of every kind and nature in and to the ... other assets of every kind and nature," as anything less than a "full and final disposition of all property claims, interests and expectancies would do violence to the parties' obvious intent." *McEndaffer*, 192 Colo. at 433, 560 P.2d at 89. Moreover, we noted that while the *Mullenax* agreement did not contain any specific provisions for insurance, the *McEndaffer* agreement did. *Id.* We reasoned that the thirteen insurance policies, although not expressly designated as such, were marital assets which were subject to distribution under the agreement because the agreement was to be "considered as [a] full, final, and complete adjudication and settlement of all of the property rights of the parties" which arose and resulted from the marriage. *Id.* It was also intimated that by agreeing to accept the coverage provided by the yearly

$6,000 insurance policies in place of the coverage provided by the thirteen policies held by the husband, the wife waived any expectancy she had in any proceeds flowing from the thirteen policies. Having waived her interest and expectancy in the insurance policies, we held that an express renunciation was not required. Accordingly, we concluded that the ex-wife was not entitled to the proceeds from the thirteen insurance policies.

The holdings in *McEndaffer* and *Mullenax* can be reconciled by recognizing the differences in the terms of their separation agreements. Where, as in *McEndaffer*, the separation agreement manifests an obvious intent by the parties that they waive, release, or abandon any right, claim, expectancy, or interest to the others property and specifically lists insurance in the agreement, then no express renunciation of an expectancy as beneficiary of the insurance is required. *Accord Beneficial Life Ins. Co. v. Stoddard*, 95 Idaho 628, 516 P.2d 187 (1973); *Sorensen v. Nelson*, 342 N.W.2d 477 (Iowa 1984); *Hollaway v. Selvidge*, 219 Kan. 345, 548 P.2d 835 (1976); *Bell v. Garcia*, 639 S.W.2d 185 (Mo.App.1982); *Romero v. Melendez*, 83 N.M. 776, 498 P.2d 305 (1972). Conversely, we will require an express renunciation where, as in *Mullenax*, the separation agreement neither clearly manifests an intent that a party waive his or her expectancy as beneficiary of an insurance policy nor specifically lists insurance as property being divided by the agreement. *Accord Manhattan Life Ins. Co. v. Evanek*, 762 F.2d 319 (3d Cir.1985); *Maxwell v. Britt*, 171 Ga.App. 230, 319 S.E.2d 88 (1984); *O'Toole v. Central Laborers' Pension & Welfare Funds*, 12 Ill. App.3d 995, 299 N.E.2d 392 (1973); *Equitable Life Assurance Soc'y v. Stitzel*, 299 Pa.Super. 523, 445 A.2d 523 (1982); *Bersch v. VanKleeck*, 112 Wis.2d 594, 334 N.W.2d 114 (1983). Applying these rules to this case, the relevant inquiry is whether the Nappers' separation agreement and the circumstances surrounding its execution contain the necessary indicia of intent to eliminate the need for an express renunciation.[4]

## B.

█ In our view, the Nappers' separation agreement more closely resembles the *McEndaffer* agreement than the one contained in *Mullenax*.[5] Whereas the *Mulle-*

4. Our focus on ascertaining the parties' intent finds substantial support in decisions of other jurisdictions. In *Hollaway v. Selvidge*, 219 Kan. 345, 548 P.2d 835 (1976), the Kansas Supreme Court interpreted a separation agreement which specifically stated that the wife released all claims and property interests she had to her husband's property as barring her subsequent claim for insurance proceeds upon her husband's death. The court stated that "[h]ere the settlement was sufficiently comprehensive in nature to demonstrate an intent to embrace and settle all the parties' affairs of whatever nature.... We think [the settlement] amounts to a relinquishment of [the wife's] inchoate rights or expectancies ... to the insurance proceeds." *Id.* at 350–51, 548 P.2d at 840 In *Sorensen v. Nelson*, 342 N.W.2d 477 (Iowa 1984), the Iowa Supreme Court interpreted a separation agreement which was designated as a "full, complete and final permanent settlement ... of any and all claims of any and every kind and character" and which stated that it was the "express intention of both parties that the Agreement shall fix and determine all rights and obligations between them." *Id.* at 478–79. The court held that the language contained in the agreement "evidences an intent 'to wipe the slate clean' between the parties," and therefore prevented the ex-wife from taking the policy proceeds upon her ex-husband's death. *Id.* at 481. In *Beneficial Life Insurance Co. v. Stoddard*, 95 Idaho 628, 516 P.2d 187 (1973), the Idaho Supreme Court stated that "[t]he weight of competent authority, however, supports the proposition ... that the beneficiary's interest in the policy may be terminated by a property settlement agreement which may reasonably be construed as a relinquishment of the spouse's rights to the insurance. This is true even though the insured does not remove the former spouse as beneficiary on the policy." *Id.* at 629, 516 P.2d at 188. We believe that the emphasis on ascertaining the parties' intent is the correct focus.

5. As we noted in *McEndaffer*, the only language in the *Mullenax* separation agreement which could be construed as a waiver was the provision that the wife conveyed to her husband "all of her right, title and interest in and to any and all other property presently standing in the name of the husband...." *McEndaffer*, 192 Colo at 433, 485 P.2d at 189. The limited language contained in the *Mullenax* agreement stands in sharp contrast to the broad-reaching *McEndaffer* agreement, which provided in part that

*nax* agreement speaks only of the wife waiving any interest in her husband's property, the *McEndaffer* and *Napper* agreements refer to the full satisfaction, waiver, and release of all claims and interest against any of the husband's property. In part, the Nappers' separation agreement provided that:

The parties are desirous of settling their property rights and other marital obligations.

The husband and wife freely and fully accept the provisions, terms and conditions hereof in full satisfaction of all claims against one another, and in and to the marital property.

3. As and for complete settlement of all property rights and claims against the other, it is agreed as follows:

. . . .

g. Each of the parties will maintain his or her present life insurance policies, and will retain the present beneficiaries on the said policies until the final decree is entered in this matter. Upon entry of final decree of dissolution each of the parties will be the sole and only owners of their respective life insurance policies, and each waives any interest in said policies. Each shall be free to change the beneficiaries on said policy.

. . . .

4. Each of the parties hereto accepts the provisions herein made in full satisfaction of any claims they may have, one against the other, for property division, maintenance, or support. . . .

. . . .

6. Except as hereinabove specifically set forth, each party has and hereby does release the other from any and all claims,

debts, demands, including demand for statutory rights to inherit in or administer the estate of the other, and the rights in and to the property of the other or to share in the resources or possessions of the other henceforth, except as herein set forth.

In our view, the Nappers' agreement manifests a clear intent that the parties to the agreement intended it to be a full and final settlement of all interests, including any interest the parties may have had as beneficiaries.

We note, however, that the Nappers' agreement contains a troublesome sentence contained in neither the *McEndaffer* or *Mullenax* agreements. The sentence, contained in paragraph 3(g) of the agreement, states that after the final divorce decree is entered, the parties "shall be free to change the beneficiaries on said policy." The respondent contends this language means that the beneficiary listed on the policy as of the date the divorce decree was entered remains the named beneficiary absent a change of beneficiary by the insured party. We decline to make such a narrow and non-contextual interpretation of the sentence. *See Gandy v. Park Nat'l Bank,* 200 Colo. 298, 615 P.2d 20 (1980) (in ascertaining the effect of a contract, the writing must be construed as a whole); *Town of Sterling v. Hurd,* 44 Colo. 436, 98 P. 174 (1908) (when construing contracts the writing should be considered as a whole rather than in detached parts); *International Technical Instruments, Inc. v. Engineering Measurements Co.,* 678 P.2d 558 (Colo. App.1983); (meaning and effect of a contract is to be determined from examination of the entire instrument, not merely from isolated clauses or phrases); *In re Estate*

the parties have now mutually agreed between themselves upon a full, final and complete settlement of their property rights. . . . It is agreed that . . . this Agreement . . . will be considered as a full, final and complete adjudication and settlement of all the property rights of the parties hereto and in any manner arising or resulting or to result from said marriage relationship, or otherwise, and in consideration of the settlement thus made, each of the parties hereto will, and does hereby, waive any and all claims of every kind or

nature in and to the monies, real and personal property, and other assets of every kind or nature that might be due to either from the other or the estate of the other as widow or husband, by right of inheritance, widow's allowance, or otherwise. . . .

192 Colo. at 432, 560 P.2d at 88. Much of the Nappers' separation agreement relating to full satisfaction and waiver of all claims is, in substance, virtually identical to the *McEndaffer* language.

*of Haywood,* 43 Colo.App. 127, 599 P.2d 976 (1979) (to determine the essential meaning of a contract, one must examine the entire writing and not merely isolated phrases or clauses contained therein).[6]

When the Nappers' agreement is viewed as a whole, it is clear that the parties intended to waive all claims they may have had, including claims as beneficiaries under any contract of life insurance. The fact that the respondent expressly waived any interest she had in the insurance policy is a strong indication that she waived her right to take as a beneficiary. The provision in the agreement requiring that the decedent maintain the respondent as beneficiary until the final decree was entered is substantial evidence that upon the entry of the final decree, the respondent's interest or expectancy as beneficiary expired.

While we need look only to the agreement itself to determine whether waiver occurred, we note the further support provided by the decedent's handwritten letter to Hamilton requesting that his mother be substituted for the respondent as beneficiary. This letter, while not necessary to our inquiry, nevertheless buttresses our conclusion. As stated by the trial judge, Dr. Napper's letter "clearly indicat[ed] his intent to change the beneficiary." Because the *Napper* agreement clearly indicates that the parties intended that any interests or expectancy in each other's insurance policies was to be terminated, no express renunciation was required. Accordingly, we hold that when the final divorce decree dissolving the marriage between the decedent and respondent was entered, the respondent's expectancy as beneficiary of the insurance policy was extinguished.

### III.

Based upon our holding in section II, we note that the question of whether Dr. Napper substantially complied with the policy terms regarding substitution of beneficiaries is inconsequential. If Dr. Napper substantially complied by sending the October 15, 1977 letter to Hamilton, then Dr. Napper's mother was substituted as designated beneficiary and, upon her death in May 1977, her interest reverted under the terms of the policy back to Dr. Napper.[7] Thus when Dr. Napper died, his interest in the policy would have passed to his widow, Gloria Napper, through intestate succession. Alternatively, if there was no substantial compliance, then the attempted substitution failed, and there was no named beneficiary in the policy. The entire interest in the policy remained in Dr. Napper and upon his death his interest again would have passed to Gloria Napper via intestate succession. Because Gloria Napper takes regardless of whether there was substantial compliance, we do not reach the issue of whether Dr. Napper substantially complied with Hamilton's requirements by mailing the October 15, 1973, letter to Hamilton.

Accordingly, we reverse and remand to the court of appeals with directions to reinstate the trial court's judgment.

**6.** According to Restatement (Second) of Contracts, § 202 (Rules in Aid of Interpretation) (1981), "(2) a writing is interpreted as whole, and all writings that are part of the same transaction are interpreted together." Comment d to this section provides:

*Interpretation of the whole.* Meaning is inevitably dependent on context. A word changes meaning when it becomes part of a sentence, the sentence when it becomes part of a paragraph. A longer writing similarly affects the paragraph, other related writings affect the particular writing, and the circumstances affect the whole. Where the whole can be read to give significance to each part, the reading is preferred.... To fit the immediate verbal context, or the more remote total context, particular words or punctuation may be disregarded or supplied.

**7.** According to the insurance policy, "[I]f any beneficiary shall die before the insured, the interest of such beneficiary shall vest in the Owner, unless otherwise provided herein or hereon." The policy contained no provisions amending its terms.