**In the Matter of the ESTATE OF Michael D. DeWITT, Deceased.**

**Rebecca Hill, as Personal Representative of the Estate of Michael DeWitt, Petitioner–Appellant,**

**v.**

**Janet DeWitt and USAA Life Insurance Company, Respondents–Appellees.**

**No. 99CA1349.**

Colorado Court of Appeals, Div. IV.

Dec. 7, 2000.

Rehearing Denied Jan. 25, 2001.

Certiorari Granted Oct. 15, 2001.

Howard and Francis, LLP, Steven G. Francis, Fort Collins, CO, for Petitioner–Appellant.

Lathrop Law Office, P.C., Diane M. Lathrop, Fort Collins, CO, for Respondent–Appellee Janet DeWitt.

Cortez Macaulay Bernhardt & Schuetze, Christopher T. Macaulay, Avi Rocklin, Denver, CO, for Respondent–Appellee USAA Life Insurance Company.

Opinion by Judge TAUBMAN.

Petitioner, Rebecca Hill, as personal representative of the estate of Michael DeWitt, appeals the trial court's order and judgment finding that respondent, Janet DeWitt (DeWitt), was the beneficiary of the life insurance policy of Michael DeWitt (decedent). We affirm.

In 1988, the decedent purchased a life insurance policy from USAA Life Insurance Company (USAA) in the amount of $150,000. The decedent named his then wife, DeWitt, as the beneficiary. Four years later, the marriage of decedent and DeWitt was dissolved, but the decedent did not replace DeWitt as the beneficiary. The decedent continued to make semi-annual premium payments until his death in 1997.

Petitioner, on behalf of the decedent's estate, filed a petition for declaratory judgment to determine whether DeWitt was entitled to retain the life insurance proceeds she had already received from USAA, or whether § 15–11–804, C.R.S.2000, prohibited DeWitt from receiving the proceeds. DeWitt filed a motion for summary judgment asserting that § 15–11–804 could not be applied retroactively.

The trial court held an evidentiary hearing and found that DeWitt was entitled to the proceeds of the life insurance policy and that § 15–11–804, if applied retroactively, would be unconstitutional. It also found that DeWitt did not waive her rights to receive life insurance benefits by signing a separation agreement in connection with the dissolution of marriage. This appeal followed.

## I. Section 15–11–804, C.R.S.2000

In 1994, Colorado modified its probate code and added § 15–11–804, C.R.S.2000, effective January 1, 1995. This statute revokes all probate and non-probate transfers to a spouse upon the termination of their marriage and prevents a party from receiving property from his or her ex-spouse's estate at death, unless express provisions to the contrary apply. In pertinent part, § 15–11–804(2), C.R.S.2000, provides:

> Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment, the divorce or annulment of a marriage: (a) Revokes any revocable (i) disposition or appointment of property made by a divorced individual to his or her former spouse in a governing instrument and any disposition or appointment created by law or in a governing instrument to a relative of the divorced individual's former spouse . . . .

### A. Standing

■ Petitioner asserts that DeWitt does not have standing to challenge either the constitutionality or the application of § 15–11–804, because she has no vested interest in the life insurance policy. We disagree.

■ Generally, the issue of standing arises in regard to the plaintiff's ability to sue, and not the defendant's ability to defend against the suit. It is rare to challenge a defendant's standing; instead, traditional standing rules do not apply when a defendant's standing is challenged. *People ex rel. Simpson v. Highland Irrigation Co.*, 893 P.2d 122 (Colo.1995).

Once the plaintiff has established standing and the defendants have been brought into court by the plaintiff, the only role for the

defendants is to defend against the suit. *Minnelusa Co. v. Andrikopoulos,* 929 P.2d 1321 (Colo.1996).

Here, petitioner is suing DeWitt, yet she is attempting to limit the defenses DeWitt may raise. However, DeWitt is merely defending against petitioner's claim. DeWitt, as the appellee, may respond to any issue presented by the appellant. Accordingly, we agree with the trial court that DeWitt has standing to defend herself on any basis, including the applicability of § 15–4–804.

## B. Retroactivity

■ Petitioner contends that the trial court erred in finding that § 15–11–804 may not be applied retroactively. She argues that DeWitt had no vested interest in the life insurance policy because her interest did not vest until the decedent died. DeWitt concedes that she did not have a vested interest prior to decedent's death, but rather argues that she had an expectancy interest in the life insurance policy. Thus, she maintains, because she had a property interest in the life insurance policy, the statute may not be applied retroactively. We agree with De-Witt.

Whether § 15–11–804 applies retroactively is an issue of first impression in Colorado. We note, however, that, in an opinion also announced today, another division of this court has reached the opposite conclusion from us and concluded that this statute may be applied retroactively. *See In re Estate of Becker,* 32 P.3d 557 (Colo.App.2000). We also note that we are a divisional court and our divisions are not bound by the opinions of another division. *See* § 13–4–106(1), C.R.S. 2000; C.A.R. 49(a)(3). For the reasons discussed below, we respectfully disagree with that division's analysis of the retrospectivity issue.

■ When the issue on appeal concerns only legal issues, the decision of the trial court is subject to an independent *de novo* review on appeal. *Evans v. Romer,* 854 P.2d 1270 (Colo.1993).

Colo. Const. art. II, § 11, prohibits laws that are retrospective in their application.

*Stewart v. Public Employees' Retirement Ass'n,* 43 Colo.App. 25, 612 P.2d 1141 (1979).

■ To determine whether a statute is retrospective under Colo. Const. art. II, § 11, a court should examine whether it "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability to transactions or considerations already past." *Jefferson County Department of Social Services v. D.A.G.,* 199 Colo. 315, 317, 607 P.2d 1004, 1006 (1980).

■ The beneficiary of an insurance policy "has an interest in the policy, which, while subject to be defeated by a change of beneficiary, can be defeated only in the manner prescribed in the policy, the charter or by-laws of the company, or by statute." *Johnson v. New York Life Insurance Co.,* 56 Colo. 178, 182–83, 138 P. 414, 416 (1913).

■ In addition, there are two distinct property interests in a life insurance policy. First, the policy owner has an interest in the policy itself, which includes the right to name and change beneficiaries. Second, the named beneficiary to the proceeds of the policy has an expectancy interest in the proceeds. The spouse designated as beneficiary has, at the time of the divorce or dissolution, only an expectancy in the proceeds, but not an interest to convey or relinquish. Thus, a decree of dissolution does not extinguish the expectancy of a beneficiary. *Napper v. Schmeh,* 773 P.2d 531 (Colo.1989).

Accordingly, DeWitt, as the named beneficiary of the decedent's life insurance policy, has an expectancy interest in the proceeds. *See Gorman–English v. Estate of English,* 849 P.2d 840 (Colo.App.1992) (a named beneficiary to life insurance proceeds has, at most, an expectancy interest which does not vest during the lifetime of the insured).

Nevertheless, petitioner contends that only a party with a vested interest may challenge the retrospective application of a statute. We disagree.

Pursuant to *Jefferson County Department of Social Services v. D.A.G., supra,* a party may challenge the retroactive application of a statute not only when its retroactive applica-

tion interferes with a vested right, but if, when applied retroactively, the statute creates a new obligation, imposes a new duty, or attaches a new disability to transactions or considerations already past.

Here, § 15–11–804, if applied retroactively, would have imposed a new duty upon the decedent to act concerning his beneficiary. In addition, it would have attached a new disability to the life insurance policy, namely, that DeWitt would not have been able to collect the proceeds, as intended by the decedent.

Only a few states have adopted probate provisions similar to § 15–11–804. The majority of jurisdictions that have addressed this issue have based their analysis on the contracts clause of the United States Constitution. They have concluded that such a provision would be unconstitutional if applied retroactively because it would violate the constitutional prohibition against retroactive impairment of contracts under both federal and state law. Although a federal contracts clause argument was not raised here, we find these cases persuasive because "[r]etroactivity has been a weighty factor in many of the cases which held that legislation violated the contracts clause." *Parsonese v. Midland National Insurance Co.,* 550 Pa. 423, 434, 706 A.2d 814, 819 (1998).

The leading case on the retroactive application of a divorce revocation statute is *Whirlpool Corp. v. Ritter,* 929 F.2d 1318 (8th Cir.1991). There, the ex-wife of the decedent was named as the beneficiary of his group life insurance policy. The court determined that the decedent was entitled to expect that his wishes regarding the insurance proceeds be ascertained according to the law in place at the time he acquired the policy. Since the divorce revocation statute was enacted after the decedent had acquired the life insurance policy but before his death, retroactive application of such statute would have substantially impaired the former spouse's expectancy as a beneficiary of the life insurance policy. Therefore, the court held that retroactive application of Oklahoma's divorce revocation statute would have constituted an unconstitutional impairment of a pre-existing contract.

Similarly, in *First National Bank & Trust Co. v. Coppin,* 827 P.2d 180 (Okla.App.1992), the court held that the statutory equivalent of § 15–11–804 could not be applied retroactively. Again, the facts are strikingly similar.

A husband purchased life insurance naming his wife as the beneficiary. They subsequently divorced, and upon his death, the ex-wife made a claim for the insurance proceeds. However, after the husband purchased the life insurance policy, but before his death, Oklahoma enacted its divorce revocation statute. The court stated that when the husband purchased the life insurance policy, he expected his wife to remain as the beneficiary until such time as he changed the beneficiary. When the law changed, "it significantly and depreciatorily altered the already completed transactions." *First National Bank & Trust Co. v. Coppin, supra,* 827 P.2d at 182. Accordingly, the court refused to apply Oklahoma's divorce revocation statute retroactively.

The Ohio Supreme Court similarly held that retroactive application of the divorce revocation statute there would impair the obligation of contracts in violation of the Ohio constitution. *Aetna Life Insurance Co. v. Schilling,* 67 Ohio St.3d 164, 616 N.E.2d 893 (1993).

The supreme court of Pennsylvania has also addressed this issue. In *Parsonese v. Midland National Insurance Co., supra,* the court dealt with a divorce revocation statute that expressly provided for retroactive application. However, the *Parsonese* court held that retroactive application would violate the contracts clause and render the statute unconstitutional. Therefore, to avoid a constitutional conflict, the court refused to apply the statute retroactively.

Two other decisions which have arguably reached the opposite conclusion are of limited value because both concluded that the original beneficiary of the insurance policy lacked standing. *See Estate of Dobert,* 192 Ariz. 248, 963 P.2d 327 (1998) (holding that because the beneficiary was not a party to the insurance contract and did not have any vested right, she lacked standing to make a constitutional claim); *Mearns v. Scharbach,* 5

P.3d 29 (Wash.App.2000) (holding that the beneficiary's interest in her deceased husband's insurance policy was insufficient to establish third party standing).

We recognize that our decision is at odds with the retrospectivity interpretation offered by the Joint Editorial Board for the Uniform Probate Code (JEB). However, we do not find the JEB analysis persuasive, particularly because much of it defends the wisdom of the substantive statute, which is not at issue here. Further, while the JEB analysis also discusses the contracts clause, it does not address whether the statute at issue is retrospective under the Colorado or any other constitution. *See JEB Statement Regarding the Constitutionality of Changes in Default Rules as Applied to Pre–Existing Documents,* 17 *American Coll. Tr. & Est. Couns.* 184 app. II (1991).

We agree with the reasoning in these cases establishing the majority rule. If a statute is "susceptible of both constitutional and unconstitutional interpretations, the court will construe it to avoid constitutional infirmities." *Colorado State Board of Medical Examiners v. Jorgensen,* 198 Colo. 275, 278, 599 P.2d 869, 871 (1979). If § 15–11–804 were applied retroactively, it would substantially interfere with DeWitt's expectancy interest by revoking her rights as a beneficiary of the decedent's life insurance policy. Accordingly, we can avoid an unconstitutional interpretation of the statute by construing the statute to apply prospectively, effective as to contracts arising on or after the effective date of the statute.

Therefore, we conclude that the trial court did not err by refusing to apply § 15–11–804 retroactively.

### C. Notice

■ Petitioner also contends that the trial court erred in not addressing the issue of whether USAA had waived its right to receive written notice of the dissolution of marriage of the decedent and DeWitt when it received actual notice of the decedent's death. Such written notice is required by § 15–11–804(7), C.R.S.2000. We conclude this issue is moot.

■ A question becomes moot when any judgment rendered therein can have no practical effect upon the existing controversy. *In re Marriage of Hartley,* 886 P.2d 665 (Colo. 1994). We have upheld the conclusion of the trial court that DeWitt is the proper recipient of the decedent's life insurance proceeds. Therefore, whether the trial court erred by not addressing the issue of notice will have no practical effect upon the existing controversy. Thus, the issue is moot.

### II. Waiver

■ Petitioner further asserts that the trial court erred in finding that DeWitt did not waive her right to be the beneficiary of the decedent's life insurance policy when she signed a separation agreement in connection with the dissolution of her marriage to the decedent. We disagree.

Petitioner argues that the trial court erred in holding a hearing to determine the intent of the decedent regarding the insurance policy, and asserts that the language of the separation agreement constitutes an unambiguous waiver of DeWitt's interest in the insurance policy. DeWitt contends that by signing the separation agreement, she did not waive her interest in the insurance policy because the separation agreement did not encompass the insurance policy. We agree with petitioner that an evidentiary hearing was unnecessary, but we agree with DeWitt that, as a matter of law, she did not waive her interest in the insurance policy by signing the separation agreement.

■ A correct judgment may be affirmed based on reasoning different from that employed by the trial court. *Klipfel v. Neill,* 30 Colo.App. 428, 494 P.2d 115 (1972).

Pursuant to their dissolution of marriage, the decedent and DeWitt entered into a separation agreement that was intended to be a complete settlement of all marital property. The agreement provided, *inter alia,* that "both the Wife and the Husband do hereby forever waive, release and quit claim to the other all rights to alimony, maintenance, dower, homestead, inheritance and all other property rights and claims which he or she now has or may hereafter have . . . ."

The trial court held an evidentiary hearing to determine the decedent's intent with respect to the disposition of the life insurance policy in question. The court heard evidence from petitioner, DeWitt, and the decedent's attorneys. The trial court concluded that the insurance policy was not included within the separation agreement because it was not considered a marital asset by the parties. Therefore, it ruled that DeWitt did not waive her interest in the life insurance policy.

Under Colorado law prior to the adoption of § 15–11–804, a decree of dissolution of marriage did not automatically terminate a spouse's expectancy as a named beneficiary of a life insurance policy. *Christensen v. Sabad,* 773 P.2d 538 (Colo.1989).

In such cases, a court must ascertain the intent of the parties as manifested by the written terms of the separation agreement, and such intent determines whether the spouse takes as a beneficiary. *Napper v. Schmeh, supra.*

Where the separation agreement manifests an obvious intent by the parties that they waive, release, or abandon any right, claim, expectancy, or interest to the other's property and specifically lists insurance in the agreement, no express renunciation of an expectancy as beneficiary of the insurance is required. On the other hand, an express renunciation of an expectancy is required when the separation agreement neither clearly manifests an intent that a party waive his or her expectancy as beneficiary of an insurance policy nor specifically lists insurance as property being divided by the agreement. *Napper v. Schmeh, supra.*

We conclude that the intent of the parties may be determined from the language of the separation agreement itself. Unlike in *Napper,* the separation agreement here did not list life insurance as property being divided by the agreement. Additionally, the separation agreement here contained language that was more narrow in scope than the language in *Napper.* The supreme court construed the separation agreement there as encompassing "the full satisfaction, waiver, and release of all claims and interest against any of the husband's property." *Napper v. Schmeh, supra,* 773 P.2d at 536.

Here, by contrast, there was no express renunciation by DeWitt of her expectancy interest in the life insurance policy at issue. The separation agreement here applied to "property rights and claims," but did not contain language indicating an intent to waive expectancy interests. *See Gorman–English v. Estate of English, supra.* Thus, it did not clearly manifest an intent that DeWitt waive her expectancy interest as a beneficiary of the decedent's life insurance policy.

Although the trial court did not need to hold a hearing to determine whether DeWitt waived her expectancy interest in the life insurance policy under the separation agreement, our conclusion is buttressed by the trial court's factual findings as to the parties' intent in entering into the separation agreement. *See Napper v. Schmeh, supra* (whether waiver occurred may be determined from review of separation agreement alone, but extrinsic evidence further supports court's analysis). Among other things, the trial court found that the decedent and DeWitt did not consider the life insurance policy to be a marital asset since it had no cash value. Both parties were aware that they were free to do as they wished with their term policies after the dissolution of marriage. The trial court further found that the decedent was aware DeWitt was the designated beneficiary of his policy, and that the decedent had discussed his life insurance, including his designation of beneficiaries and its impact upon his estate, with his two attorneys. Finally, the trial court found that after the dissolution, the decedent received and paid eleven semi-annual statements on the term life insurance policy.

Accordingly, we conclude that the trial court properly determined that DeWitt, by signing the separation agreement, did not waive her expectancy interest in the life insurance policy.

Finally, petitioner argues that the trial court erred in considering extrinsic evidence in violation of the parol evidence rule without first making a finding that the separation agreement was ambiguous. In light of our conclusion above that the decedent's intent may be determined from the face of the

separation agreement, any error by the trial court in considering extrinsic evidence is harmless. *See* C.R.C.P. 61.

Although DeWitt filed a notice of cross-appeal, she has not addressed any such issues in her brief or during oral argument. Therefore, DeWitt has abandoned her cross-appeal. *See Xerox Corp. v. ISC Corp.,* 632 P.2d 618 (Colo.App.1981).

Order and judgment affirmed.

MARQUEZ and CASEBOLT, JJ., concur.