[No. 3636.]

HODGSON v. FOWLER.

1. PARTNERSHIP—TRUSTS—EVIDENCE—STATUTE OF FRAUDS.
Title to real estate purchased by a member of a firm in connection with the firm's business and with partnership assets is held in trust for the firm, notwithstanding he may have taken it in his own name. Parol evidence is admissible to show the trust. The statute of frauds is not applicable to such a case.
2. SAME.
An interest acquired by a tenant in common by purchase of an outstanding title or by redemption from a foreclosure of the common property inures to the benefit of his cotenants upon contribution by them of their proportionate part of the price.

*Appeal from the Court of Appeals.*

THIS is an action to compel the conveyance of a one-fourth interest in ninety-two lots situate in Cottage Hill Land Com-

pany's Addition to Cottage Hill, Denver; and for an accounting. The complaint in substance avers that Hodgson, the appellant and plaintiff below, and Fowler, appellee and defendant below, were, on and before March 11, 1876, the owners of, and engaged in working, an undivided one-half interest in the carbon coal mine, in Jefferson county, Colorado; that one Eaton was the owner of the other half. That on that date they exchanged one-half interest in said mine for the lots in question, the title to the same being conveyed to plaintiff and said Eaton; the undivided one-fourth, however, in trust for the defendant; and that they then, and for a long time thereafter, were engaged jointly in developing mines in Park county, Colorado, and were bound to contribute equal sums for said purpose; and being equal owners of an undivided one-half of said lots, were bound to contribute equal sums in discharging the taxes levied thereon. That on November 19, 1885, needing money in the management of the mining property being worked by them jointly, the plaintiff borrowed $600 from one Amter, and to secure the payment of same, gave a trust deed upon the one-half interest so held by him in said lots. That this money was used for their joint benefit in developing their said mines; that plaintiff paid interest on said loan, and taxes on the lots, amounting to about $300, from his own money. That default being made in the payment of the loan, on February 18, 1887, their interest in said lots was sold at trustee's sale, at which sale defendant bought in said property for the sum of $630, the amount of said loan and interest, and took the title to the same in his own name, for the joint use and benefit of the plaintiff and defendant, with the express agreement that the title so acquired should be held in trust for plaintiff, to the extent of a one fourth interest. That at the time of the trustee's sale the plaintiff had advanced, in their joint business, in money and labor, an amount greatly above the $630 paid by defendant on said sale; and that after the payment of that sum by defendant, there would remain a large sum of money still due plaintiff. That in June and December, 1889,

in interviews between them, and upon inspection of said lots by them, defendant fully recognized plaintiff's claim to an undivided one fourth of said lots. That defendant now claims that he is sole owner of said lots, and refuses, although frequently requested, to convey to plaintiff his undivided one-fourth interest therein.

Defendant in his answer denied the allegations of the complaint, and alleged that he purchased the lots for his own use, and upon the advice of plaintiff to·do so, as Amter would get them if he didn't; set up the plea of the statute of limitations.

Plaintiff, in his replication, traversed the affirmative allegations of the answer. A trial was had to the court. Plaintiff introduced his evidence and rested; whereupon, defendant moved for a nonsuit, which was granted. Motion for a new trial was overruled and judgment entered in favor of defendant. On error to the court of appeals, the judgment of the district court was affirmed. *Hodgson v. Fowler*, 7 Colo. App. 378. To review the judgment of the court of appeals plaintiff prosecutes this appeal.

Mr. S. E. BROWN, for appellant.

Mr. JOHN P. HEISLER and Mr. BEN. SAFLEY, for appellee.

MR. JUSTICE GODDARD delivered the opinion of the court.

As well said by the learned writer of the opinion of the court of appeals, in order to sustain this action, it was incumbent upon plaintiff to establish a partnership between himself and defendant in leasing and working the Carbon coal mine as early as 1876 ; as this is essential to show that defendant had an interest in the lots in controversy prior to his purchase at the trustee's sale ; and that the legal title thereto conveyed to plaintiff was held in trust by him, to the extent of such interest. In other words, that the interest in the lots was purchased with partnership property and was held

as partnership assets, or at least owned by the plaintiff and defendant as tenants in common; since, in either view, the defendant's purchase at the trustee's sale, aside from the alleged agreement, would inure to the benefit of plaintiff, and he would be entitled to redeem his interest upon paying its *pro rata* of the amount paid by defendant.

But we cannot agree with his conclusion that the evidence was insufficient to establish such partnership. The plaintiff's evidence is positive and uncontradicted that as early as 1874 the defendant Fowler found there was coal on this land that was leased, and at his suggestion he, the plaintiff, obtained the lease, in connection with Eaton; and that while he took the lease in the name of Eaton and Hodgson, because Eaton would not have defendant's name in it, defendant had a one-fourth interest in it. That they personally operated the mine until some time in the latter part of 1877. That in 1877 or 1878 Fowler and he looked over their accounts, and Fowler had put in something like $200, and plaintiff had put in about $1,050 in working their interest in the coal mine; and it was agreed that these respective amounts should stand against these lots, and be settled when they were disposed of.

It further appears that defendant's interest in the coal mine was evidenced by a written agreement delivered to, and accepted by, him at the time the lease was secured; that defendant was notified to produce this agreement on the trial, which he failed to do, and the plaintiff testified to its contents. While not professing to give it word for word, he said that in substance it was to this effect: That it "stated the number of the land that the mine was situated on; stated how I should go on and work it in the name of Eaton and Hodgson, and the profits, if any, should be divided, and all losses, if any, should be divided between us."

In a letter dated June 29, 1890, the defendant, in speaking of the coal mine, says:

" I did not have anything to show that I had any interest except a writing you gave me for a deed, which was not in any form to be put on record. I done a good deal of work there, and never got a dollar for it."

Emerson Allen testified that he was acquainted with plaintiff and defendant in 1874; knows that Fowler prospected for coal; heard Hodgson and Fowler talk about the lease together, and heard frequent conversations between them in regard to the lease; knows from conversations with Fowler that he held a quarter interest in the lease; that the agreement between Hodgson and Fowler was that he should have one-quarter interest in the mine, and it was worked in that way.

This testimony is clearly sufficient to establish the partnership alleged in the complaint, and the interest of defendant in the coal mine. *Meagher v. Reed*, 14 Colo. 335. And we know of no rule under which the court was justified in disregarding it, when it was in no way contradicted, nor the veracity of the witnesses impeached. On March 11, 1876, a one-half interest in the coal mine was traded to Peter Powell in exchange for the ninety-two lots over which this controversy has arisen; and seven other fractional lots in the same addition, and the title thereto conveyed to plaintiff and Eaton. Plaintiff testifies that this exchange was made with the knowledge and consent of the defendant, and with the understanding between them that the title to the moiety of the lots should be taken in his name, and held in trust for the defendant to the extent of his undivided one-fourth interest.

It appearing, therefore, from competent and undisputed evidence that a partnership existed between plaintiff and defendant in the operation and ownership of an undivided one-half interest in the Carbon coal mine; and that an undivided half interest in the lots was purchased with this partnership property, it follows that the interest in the lots so purchased vested in the plaintiff and defendant equally, and they became tenants in common in the property; and it is immaterial whether the legal title thereto was conveyed to one or both. In such case our statute of frauds has no application, and it may be shown by oral evidence that the title is held in trust.

The plaintiff's testimony is also undisputed that the money

to secure which the deed of trust was given was used for the joint benefit of himself and defendant in the working and development of certain mining claims in which they were interested; that the property being advertised for sale under the trust deed, he notified Fowler, who was in Park county, to come down and buy the property in; that he came down about two days before the sale; that he agreed to buy the property in for their joint benefit; that on the morning of the sale they went together to the courthouse, and Fowler bid the property in for $630, being the amount of principal and interest secured by the trust deed.

There was also evidence introduced to the effect that the interest in the lots was worth a much larger sum than they were bid off for. That on several occasions Fowler admitted that he had bought the lots for the joint benefit of himself and plaintiff. While it is true that a mere verbal promise to purchase land for the benefit of another is void, under our statute of frauds, and cannot be enforced against the promisor, it is equally well settled that where a tenant in common acquires an outstanding title, or redeems the common property from foreclosure, the title so acquired inures to the benefit of his cotenant, upon contribution of his *pro rata* of the purchase price. *Rothwell v. Dewees*, 2 Black, U. S. 613; *Gibson v. Winslow*, 46 Pa. St. 380; Freeman on Cotenancy, § 371.

*A fortiori*, should the right to redeem be enforced when, as in this case, a tenant in common buys in the common property, under an express agreement that he would hold the legal title thereto for the joint benefit of himself and his cotenant; and when, by such purchase, he discharges an indebtedness against the property that was incurred for their mutual benefit. Under the circumstances surrounding this transaction, as they now appear from the evidence, we think the defendant holds the legal title to the property in question, charged with a constructive trust in favor of plaintiff, that equity will compel him to fulfill according to his agreement; and the court below erred in sustaining the motion

for nonsuit. The judgment of the court of appeals is accordingly reversed, with directions to reverse the judgment of the district court and remand the case for a new trial.

*Reversed.*