No. 19,732.

ARTHUR B. WISE, JR., *v*. NU-TONE PRODUCTS CO., INC.
(367 P. [2d] 346)

Decided December 18, 1961.   Rehearing denied January 8, 1962.

Mr. WM. HEDGES ROBINSON, JR., MR. GEORGE H. TILTON, JR., for plaintiff in error.

Messrs. WILLIAMS, ERICKSON & BROWN, Mr. WM. RANN NEWCOMB, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MCWILLIAMS.

As of February 25, 1960, Arthur B. Wise, Jr., and his three sisters, Neva Wise Newcomb, Winifred Wise Page, and Mary Jo Wise Mayes, were doing business as a limited partnership under the trade name of Nu-Tone Products Co., with Wise Jr. being the general partner and his three sisters being limited partners. On that date these four entered into a written contract whereby Wise Jr. agreed to sell and convey to his sisters "all of his right, title and interest" in this limited partnership, and the sisters promised to pay their brother in exchange therefor the sum of $100,000. Thereafter, the three Wise sisters incorporated under the trade name Nu-Tone Products Co. Inc., and assigned their interest in this written contract to the successor corporation.

The corporation brought the present action against

Wise Jr., alleging that although Wise Jr. on or about March 1, 1960, executed and delivered to it a good and sufficient bill of sale conveying his interest in and to the assets of the limited partnership, he nonetheless did not actually deliver *all* of the assets of the limited partnership which were then in his possession. Specifically, it is alleged that Wise Jr. failed and upon demand has refused to deliver a certain policy of life insurance which had a cash value of $3,358.74, and it is claimed that the cash value of this particular policy was a part of the assets of the limited partnership. It is finally alleged by the corporation that Wise Jr. has been paid $100,000, as provided for by the contract, and it prayed for judgment against him in the amount of $3,358.74.

In his answer Wise Jr. admits the receipt by him of the $100,000 but alleges that he has conveyed all of his interest in the limited partnership. He specifically contends that the particular life insurance policy which is the cause of the present controversy is his personal property, and at no time belonged to the limited partnership or its predecessor.

The corporation took the deposition of Wise Jr., and he in turn took the deposition of the accountant for the limited partnership. Thereupon both the corporation and Wise Jr. moved for a summary judgment, each generally averring as grounds therefor that upon a consideration of the pleadings, the aforementioned depositions and certain documents whose authenticity was conceded, there remained no geunine issue of any material fact and each claimed to be entitled to a favorable summary judgment as a matter of law.

The trial court denied Wise Jr.'s motion for a summary judgment, but granted the corporation's motion, with the comment that the only issue to be resolved was whether the policy of life insurance was an asset of the limited partnership. The trial court concluded that the cash value of this policy was an asset of the limited partnership and accordingly entered judgment for the

corporation against Wise Jr. in the amount of $3,358.74, interest and costs. The court dispensed with the necessity of a motion for rehearing or new trial, and by writ of error Wise Jr. seeks reversal of this judgment.

We conclude that the trial court was correct in its disposition of these two motions for summary judgment, but in order to demonstrate the propriety thereof it becomes necessary to relate in some detail the factual background which forms the basis for this regrettable family dispute.

At the outset it should be noted that Wise Jr. does not urge that this judgment be reversed and the case remanded for trial on the grounds that there really is a disputed issue of fact and that the matter cannot properly be resolved under Rule 56, R.C.P. Colo. Rather, he too agrees that there is no genuine issue as to any material fact and that the controversy should properly be resolved by summary judgment. His position, simply stated, is that the trial court erred in failing to grant *his* motion for summary judgment.

From the record it is learned that as of March 15, 1944, Arthur B. Wise, Sr., and his son, Wise Jr., were doing business as a general partnership under the trade name of "Nu-Tone Products Company," with Wise Sr. having an 80% interest in this partnership and his son the remaining 20%. On that date Wise Sr. executed a will which provided, in part, that upon his death his 80% interest in this partnership should be divided equally between his son and his three daughters, provided further the bequest to his daughters be conditioned on their entering into a limited partnership with their brother within one year after his death, or within six months after the discharge of his son from military service, whichever occurred first.

On November 12, 1946, Wise Sr. and his son purchased a policy of life insurance in the sum of $10,000, Wise Jr. being the named insured and the beneficiary being designated as follows: "* * * to the beneficiary Arthur B.

Wise, Sr., father of the insured, if he survives the insured, otherwise Nu-Tone Products Co., Denver, Colorado, a partnership as constituted at the death of the insured." It is noted that though Wise Jr. had a wife and children, none of these persons who were natural objects of his bounty was designated as a beneficiary or even as a contingent beneficiary. Rather the beneficiary was Wise Jr.'s partner, and the contingent beneficiary was the partnership "as constituted at the death of the insured."

Wise Sr. died on October 12, 1954, with the will theretofore executed on March 15, 1944, as his last will and testament. On March 17, 1955, Wise Jr. and his three sisters entered into a written limited partnership agreement, which by its terms was retroactive to October 15, 1954. In general the contributions made by Wise Jr. and his three sisters to this limited partnership were their respective interests in the general partnership, Wise Jr. prior to his father's death owning a 20% interest in his own right and he and his sisters each acquiring a 20% interest under their father's will.

It was further agreed that all premiums due on this policy were paid by the general partnership from November 1946 to October 1954, and thereafter by the limited partnership until its termination. Also, premium payments were always considered as a business expense and were never charged against Wise Jr.'s share of the profits.

Wise Jr. stated in his deposition that he did not know of any agreement with his father to the effect that Wise Jr. "owned" this policy of life insurance. He also testified that during the existence of the limited partnership he had no understanding or agreement with his sisters concerning ownership of this policy, although he "assumed" they knew of its existence.

The remaining evidentiary matters stipulated to by counsel and which they suggest may have some bearing on the issue here to be resolved may be itemized as

follows: (1) the insurance policy in question was kept in the safety deposit box of the general partnership from 1946 to 1954, and thereafter in the box of the limited partnership until March 1, 1960; (2) on March 1, 1960, Wise Jr. emptied the deposit box of the limited partnership and turned over its entire contents to his sisters and their corporation, save and except the insurance policy which he retained; (3) that though this insurance policy provided that the insured, Wise Jr. had the right to change the designation of beneficiary, he did not do so until shortly after March 1, 1960, when he changed the beneficiary from Nu-Tone Products Co. to his wife, with his two children designated as contingent beneficiaries; and (4) that the accountant never carried this policy as an asset of either the general or limited partnership, his explanation being that though he knew about the policy in his opinion the policy had no cash value unless and until it was actually surrendered.

■ The Uniform Partnership Law provides, in part, that: " * * * Unless the contrary intention appears, property acquired with partnership funds is partnership property * * *." See C.R.S. '53, 104-1-8. The Uniform Limited Partnership Law does not have a comparable or parallel statutory provision, though C.R.S. '53, 104-2-29 provides that "in any case not provided for in this article, the rules of law and equity, including the law merchant, shall govern."

■ However, prior even to the enactment of The Uniform Partnership Law in 1931 it was the well settled rule in Colorado that property acquired with partnership funds is presumed to belong to the partnership; that this presumption continues unless and until it is established that the partners, and all of them, had a contrary intention and understanding; and that this presumption is not negated merely because the property acquired with partnership funds is placed in the name of one of the individual members of the partnership, See *Kayser v. Maugham*, 8 Colo. 339, 7 Pac. 286; *Hodgson v. Fowler*,

24 Colo. 278, 50 Pac. 1034; *Payne v. Martin,* 39 Colo. 265, 89 Pac. 46; and *Oswald v. Dawn,* 143 Colo. 487, 354 P. (2d) 505.

Wise Jr. in his deposition testified that he knew of no agreement with his father to the effect that this policy of insurance was his personal property, nor did he know of any such agreement or understanding with his sisters. Thus, there is no direct evidence that either Wise Jr. and his father or Wise Jr. and his sisters ever intended the policy to be the personal property of Wise Jr. The indirect or circumstantial evidence bearing on this issue also falls far short of establishing any such intent. Indeed the circumstances as we view them, instead of establishing a "contrary intention," actually support and reinforce the presumption that "property acquired with partnership funds is partnership property." For example, if from the outset this policy was clearly intended by both Wise Jr. and his father to be the property of Wise Jr. would it not have been more logical and reasonable that he designate his wife and minor children as the beneficiaries, instead of designating his partner as the beneficiary with the partnership as constituted on his death as the contingent beneficiary? The fact that the accountant did not include the cash value of this policy as an asset of the partnership is under the circumstances not significant. The controlling and decisive fact is that the policy was paid for by partnership funds, and the rule is that property acquired with partnership funds is deemed to be partnership property, unless it be shown that the partners had a contrary intention. There being no evidence of a contrary intent, the presumption that this policy having been purchased and paid for out of partnership funds is a partnership asset, should prevail.

It may well be that Wise Jr. as the named insured under the terms of the policy had the right to designate the beneficiary and to subsequently change such designation. Nor can it be disputed that during the lifetime of any insured the beneficiary of a policy of life insur-

ance has no vested right but only a mere expectancy. But such begs the real issue, which is whether the cash value of such a policy during the lifetime of the insured is a partnership asset where, as here, all premiums are paid with partnership funds.

■ Also, it is suggested that the nature of this particular asset, i.e. a policy of life insurance, takes it out from under the general rule. No authority is cited in support of this alleged exception, and indeed the general rule is that an insurance policy on the life of one who is a partner in a partnership, be it general or limited, which is paid for with partnership funds is deemed to be a partnership asset, subject of course to a contrary intention or understanding on the part of all partners. See *Quinn v. Leidenger*, 107 N.J.E. 188, 152 A. 249, aff'd 160 A. 537; *Kavanaugh v. Johnson*, 290 Mass. 587, 195 N.E. 797; and *Miller v. Nall*, 65, Cal. App. 200, 150 P. (2d) 287, each of which is concerned with a somewhat analagous problem to that posed by the instant case.

■ It is finally urged that this action is barred by a certain release executed by Wise Jr. and his three sisters on March 1, 1960, which release provides, in part, as follows:

"We * * * do hereby forever release and discharge * * * each other * * * from any and all claims, demands, actions, causes of action or for any reason whatsoever whether arising out of The Nu-Tone Products Co. or otherwise, for or because of any matter or thing done, omitted and suffered to be done by any one or more of the signatories hereto, *except as expressly provided in the attached letter and agreement dated February 25, 1960.*" (Emphasis supplied.)

The "letter and agreement dated February 25, 1960" is the contract wherein Wise Jr. promised to convey "all of his right, title and interest" in the assets of the Nu-Tone Products Co. for $100,000. The release therefore by its own terms clearly excepts from its operation the very

contract which forms the basis for the present action, and hence is no bar to an action based on this contract.

The judgment is affirmed.

MR. CHIEF JUSTICE HALL and MR. JUSTICE MOORE concur.