In the Matter of the ESTATE
OF Michael D. DeWITT,
deceased.

Rebecca Hill, Personal Representative of
the Estate of Michael D. DeWitt,
Deceased, Petitioner,

v.

Janet DeWitt and USAA Life Insurance
Company, Respondent.

In the Matter of the Estate of Darwin
J. Becker, a/k/a Darwin James
Becker, deceased.

Donna Fasi, f/k/a Donna Becker or
Donna Sue Becker, Petitioner,

v.

Douglas J. Becker, Personal Representative of the Estate of Darwin J. Becker, a/k/a Darwin James Becker, deceased, Respondent.

Nos. 01SC136, 01SC248.

Supreme Court of Colorado,
En Banc.

Sept. 9, 2002.

Rehearing Denied Oct. 7, 2002.

Howard and Francis, LLP, Steven G. Francis, Fort Collins, Colorado, Attorneys for Petitioner Rebecca Hill.

Lathrop Law Office, P.C., Diane M. Lathrop, Fort Collins, Colorado, Attorneys for Respondent Janet DeWitt.

Kutak Rock, LLP, Ira J. Bornstein, Denver, Colorado, Attorneys for Respondent USAA Life Insurance Company.

John H. Licht, Attorney at Law, John H. Licht, Denver, Colorado, Anne Whalen Gill, P.C., Anne Whalen Gill, Castle Rock, Colorado, Attorneys for Petitioner Donna Fasi.

Fairfield and Woods, P.C., John M. Tanner, Denver, Colorado, Attorneys for Respondent Douglas Becker.

Justice MARTINEZ delivered the Opinion of the Court.

These two cases, which we consolidated for purposes of this opinion, concern the question of whether a designation of a spouse as beneficiary of a life insurance policy survives the dissolution of marriage. Prior to July 1, 1995, Colorado law provided that the dissolution of marriage did not revoke a former spouse's designation as beneficiary of a life insurance policy absent an intent to the contrary expressed by the insured. *See, e.g., Napper v. Schmeh,* 773 P.2d 531, 533 (Colo. 1989); *Christensen v. Sabad,* 773 P.2d 538, 540 (Colo.1989); *Mullenax v. Nat'l Reserve Life Ins. Co.,* 29 Colo.App. 418, 424, 485 P.2d 137, 140 (1971). In 1995, the general assembly enacted section 15–11–804(2), 5. C.R.S. (2001),[1] which is based on the Uniform Probate Code (UPC) section 2–804 (1990 revision). Section 2–804 represents a legislative determination that the failure of an insured to revoke the designation of a spouse as beneficiary after dissolution of the marriage more likely than not represents inattention. Thus, section 15–11–804(2) attempts to give effect to the presumptive intent of the dece-

dent. This section revokes all probate and non-probate transfers to a spouse upon dissolution of a marriage, thus preventing an individual from receiving property from her former spouse's estate at death unless certain express provisions to the contrary apply. *See* § 15–11–804, 5 C.R.S. (2001); *see also* JEB Statement Regarding the Constitutionality of Changes in Default Rules as Applied to Pre–Existing Documents, 17 Am. Coll. Tr. & Est. Couns. 184 app. II (1991).

Section 15–11–804(2) specifically provides that it applies to estates, wills, and governing instruments of decedents who die on or after July 1, 1995. The decedents in these cases died after July 1, 1995, but their marriages to the beneficiaries dissolved before July 1, 1995. Thus, these cases present the specific question of whether section 15–11–804(2) automatically revoked the designation of a former spouse as the beneficiary of a life insurance policy, where the designation and the dissolution of marriage occurred before the statute's effective date, but the decedent's death occurred after the statute's effective date.

In *Hill v. DeWitt,* 32 P.3d 550 (Colo.Ct. App.2000), a panel of the court of appeals held that the application of section 15–11–804(2) in this case would be unconstitutionally retrospective, and therefore held that the former spouse, who was named as a beneficiary in the insurance policy, was entitled to the proceeds of that policy. *DeWitt,* 32 P.3d at 555. In *Fasi v. Becker,* 32 P.3d 557 (Colo.Ct.App.2000), a different panel of the court of appeals held that the application of section 15–11–804(2) violated neither the constitutional ban on retrospectivity nor the constitutional ban on impairment of contracts, and thus held that the statute acted to revoke the decedent's designation of his former spouse as the beneficiary of his life insurance policy. *Becker,* 32 P.3d at 563–64. Given

---

1. Section 15–11–804 provides, in pertinent part: Except as provided by the express terms of a governing instrument, a court order, or a contract relating to the division of the marital estate made between the divorced individuals before or after the marriage, divorce, or annulment, the divorce or annulment of a marriage: (a) revokes any revocable (i) disposition or

appointment of property made by a divorced individual to his or her former spouse in a governing instrument and any disposition or appointment created by law or in a governing instrument to a relative of the divorced individual's former spouse....

§ 15–11–804(2), 5 C.R.S. (2001).

this split in the court of appeals, we granted certiorari. We hold that the general assembly intended section 15–11–804(2) to be retroactive and that such retroactive application is neither unconstitutionally retrospective nor unconstitutionally impairs contracts. We thus reverse the court of appeals' decision in *DeWitt* and affirm the court of appeals' decision in *Becker*.

After reviewing the relevant facts and procedure in each case, we address the issue of retroactivity. We first determine that the general assembly intended section 15–11–804(2) to be applied retroactively. Based on this determination, we must then decide whether such application is unconstitutionally retrospective. Given the unique nature of a life insurance policy, which concerns not only the insurer and the insured but also the named beneficiary, we proceed to engage in two retrospectivity analyses of section 15–11–804(2)'s impact. First, we consider section 15–11–804(2)'s impact on the named beneficiaries and determine that it is not retrospective. Second, we consider section 15–11–804(2)'s impact on the decedents and determine that it is not retrospective.

Finally, we address the contention that section 15–11–804(2) violates the constitutional prohibition on impairment of contracts. As we do in our analysis of retrospectivity, we also address the contract clause claim from the perspective of both the named beneficiaries and the decedents because of the nature of a life insurance policy. After distinguishing between the donative and contractual aspects of a life insurance policy, we determine that the named beneficiaries do not have a contract clause claim. After holding that the beneficiaries have standing to assert a contract clause claim on behalf of the decedents, we determine that application of section 15–11–804(2) does not unconstitutionally impair the decedents' contract with their insurers.

## I. Facts and Procedure

### A. Hill v. DeWitt

In 1988, while decedent Michael DeWitt (decedent DeWitt) was married to respondent Janet DeWitt (DeWitt or named benefi-

ciary), he purchased a life insurance policy from respondent USAA Life Insurance Company (USAA) in which he named DeWitt as the beneficiary. Decedent DeWitt and DeWitt divorced in 1992. After the dissolution, decedent continued to pay his insurance premiums until his death in 1997, but never changed the designation of his beneficiary. Section 15–11–804(2) became effective July 1, 1995, two years before decedent's death.

Upon decedent DeWitt's death, USAA began paying the proceeds of the policy to DeWitt, the named beneficiary. Petitioner Rebecca Hill (Hill), the personal representative of decedent DeWitt's estate, filed a petition for declaratory judgment to determine whether section 15–11–804(2) applied retroactively to prohibit DeWitt from receiving the proceeds. DeWitt filed a motion for summary judgment arguing that the statute could not be applied retroactively, thus mandating that she receive the proceeds.

After a hearing, the trial court held that a retroactive application of the statute would be unconstitutional and thus held that DeWitt was entitled to the proceeds. The court of appeals affirmed. That court held that although DeWitt only had an expectancy interest in the proceeds, she could nonetheless challenge the application of the statute as retrospective. *DeWitt*, 32 P.3d at 553–54. In addition, relying on *Whirlpool Corp. v. Ritter*, 929 F.2d 1318 (8th Cir.1991), the court of appeals held that retroactive application of the statute would unconstitutionally impose a new duty on decedent DeWitt to act concerning his beneficiary as well as substantially interfere with DeWitt's expectancy interest. *DeWitt*, 32 P.3d at 554–55.

### B. Fasi v. Becker

Decedent Darwin Becker (decedent Becker) and petitioner Donna Fasi (Fasi or named beneficiary) were married in 1983. In 1987, they executed life insurance policies, covering them both, in which decedent Becker named Fasi as beneficiary. The parties divorced in 1994. Section 15–11–804(2) became effective on July 1, 1995. When decedent Becker died in 1997, Fasi was still named as the beneficiary.

Respondent Douglas Becker, as personal representative of decedent Becker's estate, claimed that, pursuant to section 15–11–804(2), the estate was entitled to the proceeds of the insurance policy. The trial court agreed, holding that the statute applied retroactively to revoke decedent Becker's designation of Fasi as the beneficiary. The court of appeals affirmed. That court held that application of the statute was not unconstitutionally retrospective because Fasi's interest in receiving the proceeds did not vest until decedent Becker's death, which was after the effective date of the statute. *Becker,* 32 P.3d at 562. Given the split in the court of appeals' panels, we granted certiorari in both cases.[2]

## II. Retrospectivity

■ Absent legislative intent to the contrary, a statute is presumed to operate prospectively, meaning it operates on transactions occurring after its effective date. *See Coffman v. State Farm Mut. Auto. Ins. Co.,* 884 P.2d 275, 279 (Colo.1994); *Ficarra v. Dep't of Regulatory Agencies,* 849 P.2d 6, 11 (Colo.1993); *Curtis v. McCall,* 79 Colo. 122, 123, 244 P. 70, 71 (1926). A statute is retroactive if it operates on transactions that have already occurred or on rights and obligations that existed before its effective date. *Ficarra,* 849 P.2d at 11.

■ Retroactive application of statutes is generally disfavored by both common law and statute. *Id.; see also* § 2–4–202, 1 C.R.S. (2001). Although disfavored, the retroactive application of a statute is not necessarily unconstitutional; it is permitted where the statute effects a change that is procedural or remedial.[3] *Kuhn v. State,* 924 P.2d 1053, 1057 (Colo.1996). Because some retroactively applied legislation is constitutional while some is not, Colorado courts have marked this distinction by evoking the term contained in the constitutional provision—"retrospective"—to describe a statute whose retroactive application is unconstitutional. *Ficarra,* 849 P.2d at 12.

### A. Analysis

■ The constitutional proscription on retrospectivity states that "[n]o ... law ... retrospective in its operation ... shall be passed by the general assembly." Colo. Const. art. II, § 11. The purpose of this proscription is to prevent unfairness that would result from changing the consequences of an act after that act has occurred. *Van Sickle v. Boyes,* 797 P.2d 1267, 1271 (Colo. 1990). A statute is retrospective if it " 'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past.' " *Denver S. Park & Pac. Ry. Co. v. Woodward,* 4 Colo. 162, 167 (1878)(quoting *Soc'y for the Propagation of the Gospel v. Wheeler,* 2 Gall. 105, 22 F. Cas. 756, 767 (C.C.D.N.H.1814)); *see also Van Sickle,* 797 P.2d at 1271.

■■ We utilize a two-step inquiry in assessing a statute under the retrospectivity provision of our constitution. *City of Greenwood Village v. Petitioners for the Proposed City of Centennial,* 3 P.3d 427, 444 (Colo. 2000). First, we must determine whether the general assembly intended the challenged statute to operate retroactively. *Id.* In order to overcome the presumption of prospectivity, the statute must reveal a clear legislative intent of retroactivity. *Ficarra,* 849 P.2d at 14. However, express language of retroactive application is not required for courts to find such intent. *Id.* If we determine that the general assembly intended retroactivity, we turn to the second step of determining whether the challenged statute is unconstitutionally retrospective. *City of Greenwood Village,* 3 P.3d at 444.

---

2. The specific issue on which we granted certiorari is identical in both cases: Whether § 15–11–804(2) applies to revoke revocable rights granted during a marriage that dissolved before the statute became effective on July 1, 1995 and one ex-spouse dies after that effective date.

3. Procedural statutes are distinguished from substantive statutes. Substantive statutes relate to the creation, elimination or modification of vested rights or liabilities, while procedural rights relate only to remedies or modes of procedure to enforce such rights or liabilities. *See People v. D.K.B.,* 843 P.2d 1326, 1331 (Colo.1993).

Because a statute is retrospective if it either (1) impairs a vested right, or (2) creates a new obligation, imposes a new duty, or attaches a new disability, our retrospectivity analysis consists of two inquiries. First, we must consider the "vested right" prong of retrospectivity. However, as discussed below, a finding that a statute impairs a vested right, although significant, it is not dispositive as to retrospectivity; such a finding may be balanced against the public interest in the statute.

A vested right is one that is not dependent on the common law or statute but instead has an independent existence. *People v. D.K.B.*, 843 P.2d 1326, 1331 (Colo. 1993). There is no bright-line test for determining whether a right is vested. *Ficarra*, 849 P.2d at 17. Instead, when considering whether a vested right is implicated, we consider (1) whether the public interest is advanced or retarded; (2) whether the statute gives effect to or defeats the bona fide intentions or reasonable expectations of the affected individuals; and (3) whether the statute surprises individuals who have relied on a contrary law. *Id.* at 16 (citing *Southwestern Bell Tel. Co. v. Public Util. Comm'n of Tex.*, 615 S.W.2d 947, 956–57 (Tex.Civ.App.1981)).

As noted, however, a determination that a statute implicates a vested right is not dispositive as to its retrospectivity because "[v]ested rights do not accrue to thwart the reasonable exercise of the police power for the public good." *Lakewood Pawnbrokers, Inc. v. City of Lakewood*, 183 Colo. 370, 377, 517 P.2d 834, 838 (1973). As a result, we have held that a vested right, while an important consideration in our determination regarding retrospectivity, may be balanced against public health and safety concerns, the state's police powers to regulate certain practices, as well as other public policy considerations. *See generally Ficarra*, 849 P.2d at 21; *Van Sickle*, 797 P.2d at 1271; *Lakewood Pawnbrokers, Inc.*, 183 Colo. at 377, 517 P.2d at 838. The statute, however, must bear a rational relationship to the legitimate government interest that is asserted in order to be permissibly retroactive. *Ficarra*, 849 P.2d at 22.

Second, if a vested right is not implicated, we must consider the "new obligation, new duty, or new disability" prong of retrospectivity. *Id.* at 16. Although this prong directs that retrospectivity may result from the creation of a new obligation, imposition of a new duty, or attachment of a new disability with respect to "transactions or considerations already past," the application of a statute is not rendered retrospective "merely because the facts upon which it operates occurred before the adoption of the statute." *City of Greenwood Village*, 3 P.3d at 445; *see also Zaragoza v. Dir. of Dep't of Revenue*, 702 P.2d 274, 276 (Colo.1985); *Cont'l Title Co. v. Dist. Ct.*, 645 P.2d 1310, 1314 (Colo. 1982). Consequently, the fact that the designation of beneficiary and dissolution of marriage occurred before the effective date of section 15–11–804(2) does not necessarily preclude the application of the statute in these cases.

### B. Application

In these cases, section 15–11–804(2) is retroactive because it will operate on a transaction that occurred before the effective date of the statute, namely the designation of a beneficiary to a life insurance policy by the decedent. Accordingly, we address whether section 15–11–804(2) is retrospective. To resolve this issue, we must consider the different interests that are implicated by the life insurance policies at issue. There are three sets of interests implicated by life insurance policies, namely the interests of the insurer, the insured-decedent, and the named beneficiary. In these cases, it is argued that section 15–11–804(2) is retrospective as to the beneficiaries and as to the insured-decedents. Accordingly, our retrospectivity inquiry considers section 15–11–804(2)'s impact on both the named beneficiaries and the decedents, an analytical framework that has been utilized by other courts considering this issue. *See, e.g., Allstate Life Ins. Co. v. Hanson*, 200 F.Supp.2d 1012, 1017 (E.D.Wis.2002); *Dobert v. Dobert–Koerner*, 192 Ariz. 248, 963 P.2d 327, 330, 332 (Ct.App.1998).[4] A finding

---

**4.** Based on the third-party standing doctrine, we hold that the named beneficiaries have standing

of retrospectivity with regard to either of these interests will render the statute unconstitutionally retrospective for all purposes.

■ As noted, our first inquiry in a retrospectivity analysis is whether the general assembly intended retroactivity. In discerning the general assembly's intent, we look to the statutory section in question. When the meaning of a statute is plain and free from ambiguity, we give effect to that meaning and need not resort to rules of statutory interpretation. *Farmers Ins. Exch. v. Bill Boom, Inc.*, 961 P.2d 465, 470 (Colo.1998); *Norton v. Leadville Corp.*, 43 Colo.App. 527, 529, 610 P.2d 1348, 1349 (1979).

■ In the present cases, the general assembly expressed its intent that the statute applies when a decedent died on or after July 1, 1995, in the statutory language:

> **Effective date—applicability for reenactment of article 11.** (1) Except as provided elsewhere in this code and except as provided otherwise in this section, parts 1 to 9 of article 11, as reenacted effective July 1, 1995, *shall apply to the estates, wills, or governing instruments of decedents dying on or after July 1, 1995.*

§ 15–17–102, 5 C.R.S. (2001)(emphasis added). We find that the plain language of the foregoing provision indicates the general assembly's intent that the *death* of an insured-decedent on or after July 1, 1995, triggers application of the statute, notwithstanding that the insurance contract may have been entered into, and the divorce may have occurred, before the effective date of the statute; the statute will be retroactive under such circumstances. Accordingly, we find that the general assembly intended section 15–11–804(2) to operate retroactively. Because we find the presumption of pros-

pectivity is rebutted, we turn to the second retrospectivity inquiry: Whether retroactive application of the statute is retrospective.

### 1. The Interests of the Named Beneficiaries

#### a. Vested Right

■ A vested right is described as one that is "something more than a mere expectation based upon an anticipated continuance of the existing law." *Ficarra*, 849 P.2d at 16. Our case law makes clear that a beneficiary to a life insurance contract does not possess a vested interest in that contract. Instead, a beneficiary merely possesses an expectancy, or contingent, interest. *See, e.g., Wise v. Nu–Tone Prod. Co.*, 148 Colo. 574, 580–81, 367 P.2d 346, 350 (1961) ("[T]he beneficiary of a policy of life insurance has no vested right but only a mere expectancy."); *Gorman–English v. English*, 849 P.2d 840, 842 (Colo.Ct.App.1992)("[T]he interest of a named beneficiary to the insurance proceeds is, at most, an expectancy which vests no present property interest in the beneficiary."). Accordingly, retroactive application of section 15–11–804(2) does not impair a vested right of the named beneficiaries, which in turn mandates our conclusion that it is not retrospective under the "vested right" prong of the retrospectivity inquiry. We thus turn to the "new obligation, new duty, or new disability" prong of our retrospectivity analysis.

#### b. New Obligation, New Duty, or New Disability

The court of appeals in *DeWitt* held that section 15–11–804(2) was retrospective because its application "would have attached a new disability to the life insurance policy, namely that DeWitt would not have been

---

to assert both the retrospectivity and impairment of contract claims on behalf of the decedents. In order to have standing to assert the rights of the decedents under this doctrine, the named beneficiaries must show "injury to themselves sufficient to guarantee concrete adverseness." *People v. Rosburg*, 805 P.2d 432, 435 (Colo.1991). This requirement is met because both have a clear interest in the resolution of these issues: Both will suffer economic loss if the statute revokes their status as beneficiaries. In addition, they must satisfy one of the following factors: (1)

a substantial relationship with the decedents; (2) difficulty or improbability of the decedents asserting the alleged deprivation of their rights; or (3) a need to avoid dilution of the decedents' rights if standing is not permitted. *Id.* At a minimum, they satisfy the first factor because both, as named beneficiaries and former spouses of the decedents, have a substantial relationship with the third party-decedent whose rights they are asserting. As such, we need not reach the remaining two factors.

able to collect the proceeds, as intended by the decedent." *DeWitt,* 32 P.3d at 554. We disagree with this analysis. First, while it is true that the retroactive application of the statute would result in a named beneficiary not being able to collect the proceeds, the nature of the named beneficiary's interest was a mere expectancy. *See Gorman–English,* 849 P.2d at 842. As such, we have held that her interest may be defeated "in the manner prescribed in the policy ... or by statute." *Johnson v. N.Y. Life Ins. Co.,* 56 Colo. 178, 182–83, 138 P. 414, 416 (1913). In this case, although the statute acts to defeat her expectancy interest in the proceeds, it cannot be reasoned that her inability to receive such proceeds unconstitutionally imposes a new disability. We have long recognized that the general assembly may regulate the insurance industry. *See generally id.* In this case, where the general assembly acted to regulate the insurance contract in order to give effect to the presumptive intent of the insured-decedents, we decline to conclude that such regulation imposed a "disability" of constitutional magnitude upon the named beneficiaries with a mere expectancy interest.

Additionally, application of the statute imposes neither a new duty nor a new obligation upon the named beneficiaries: Any duty or obligation pursuant to the statute would be upon the decedent, as the insured, to follow the statutorily mandated procedure for ensuring that his former spouse remained the beneficiary to the policy. *See* § 15–11–804(2).

For all of these reasons, we determine that the retroactive application of section 15–11–804(2) is not retrospective with regard to the beneficiaries' interests.

### 2. The Interests of the Decedents

#### a. Vested Right

Any vested right attributable to the decedents in these cases arises as a result of their contracts with the insurance companies. Accordingly, we resolve this issue below in our discussion of the constitutional prohibition on impairment of contracts.

#### b. New Obligation, New Duty, or New Disability

The *DeWitt* court held that section 15–11–804(2) was retrospective because its application "would have imposed a new duty upon the decedent to act concerning his beneficiary." *DeWitt,* 32 P.3d at 554. Although we agree that the statute created new requirements in order for the decedents to maintain their designations of beneficiary, we disagree that the imposition of those new requirements is retrospective.

As noted, the retroactive application of a statute is not retrospective where it effects a change that is procedural or remedial as opposed to substantive. *D.K.B.,* 843 P.2d at 1331. We consider section 15–11–804(2) to be procedural because it relates only to a mode of procedure to enforce the right of each decedent to designate a beneficiary. *See id.* More specifically, the statute, which causes, as a matter of procedure, the automatic revocation of a beneficiary designation of a former spouse upon divorce, also provides for additional procedures through which the insured may preserve the designation of his former spouse as a beneficiary. For example, divorcing parties may add an express provision to the insurance contract, or specify in a separation agreement, or obtain a court order, stating that section 15–11–804(2) does not act to automatically revoke a spouse's designation as beneficiary. *See* § 15–11–804(2).

Further, our retrospectivity jurisprudence requires that any new obligation, duty, or impairment that is asserted on behalf of the decedents be balanced against the public interest and statutory objectives of section 15–11–804(2). *Ficarra,* 849 P.2d at 21. The statute at issue must be reasonably related to the asserted public interest and statutory objectives. *Id.* at 22.

Section 15–11–804(2) effects a change in beneficiary of an insurance policy. Both the insurance industry and the probate process is highly regulated by statute in Colorado. *See, e.g.,* § 10–3–101 *et seq.,* 3 C.R.S. (2001); § 15–10–102 *et seq.,* 5 C.R.S. (2001); § 15–11–101 *et seq.,* 5 C.R.S. (2001). As a result, the decedents in these cases could reasonably

expect that their life insurance policies would be regulated by statute, including the possibility of a statute addressing procedural changes in beneficiary designation. Finally, the public interest and statutory objectives of (1) giving finality to divorce disputes; and (2) recognizing that the presumptive intent of a divorced spouse is to revoke the designation of his former spouse as a beneficiary are rationally related to the procedures and effect of section 15–11–804(2).

For these reasons, we hold that the application of section 15–11–804(2) to the decedents in these cases is not unconstitutionally retrospective.

### III. Impairment of Contract

The named beneficiaries contend that section 15–11–804(2) violates the impairment of contract provisions of both the Colorado and United States Constitutions. They argue that these provisions are violated as to themselves as beneficiaries as well as to the decedents.

### A. Analysis

The prohibition against impairment of contract is found in both the Colorado and United States Constitutions. The Colorado Constitution provides, in pertinent part, that "No ... law impairing the obligation of contracts ... shall be passed by the general assembly." Colo. Const. art. II, § 11. The United States Constitution states, in pertinent part, that "No state shall ... pass any ... law impairing the obligation of contracts." U.S. Const. art. I, § 10. These clauses, while designed to protect vested contract rights from legislative invasion, are not to be interpreted as absolute. *See generally Hanson,* 200 F.Supp.2d at 1017; *Ohio & Colo. Smelting & Refining Co. v. Pub. Util. Comm'n,* 68 Colo. 137, 142–43, 187 P. 1082, 1084–85 (1920); *Union Pac. Ry. Co. v. De-Busk,* 12 Colo. 294, 305–06, 20 P. 752, 757 (1888). Instead, the clauses must be read to permit legislative action that promotes "the common weal, or ... general good of the public, though contracts previously entered into between individuals may thereby be affected." *Ohio & Colo. Smelting,* 68 Colo. at 142, 187 P. at 1084. Accordingly, a finding that a law impairs a contract does not end the inquiry. Notwithstanding such a finding, a court should uphold a challenged statute if it is reasonable and appropriately serves a significant and legitimate public purpose when considered against the severity of the contractual impairment. *Hanson,* 200 F.Supp.2d at 1018.

The United States Supreme Court has held that, in assessing an alleged contract clause violation, the inquiry is " 'whether the change in state law has operated as a substantial impairment of a contractual relationship.' " *Gen. Motors Corp. v. Romein,* 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992) (quoting *Allied Structural Steel Co. v. Spannaus,* 438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978)). The answer to this inquiry involves consideration of three factors. First, the court must ascertain whether there is a contractual relationship; to establish this component, a party must demonstrate that the contract gave him a vested right. *See Dodge v. Bd. of Educ.,* 302 U.S. 74, 77–78, 58 S.Ct. 98, 82 L.Ed. 57 (1937); *Police Pension & Relief Bd. v. McPhail,* 139 Colo. 330, 336, 338 P.2d 694, 697 (1959). Second, a court must determine whether a change in the law impairs that contractual relationship. *Romein,* 503 U.S. at 186, 112·S.Ct. 1105. Third, a court must decide whether the impairment is substantial. *Id.* The second two components are often considered together: To prove substantial impairment of a contractual relationship, a party must demonstrate that the law was not foreseeable and thus disrupts the parties' expectations. *See Allied Structural Steel,* 438 U.S. at 245, 98 S.Ct. 2716; *Hanson,* 200 F.Supp.2d at 1018.

Because the contract clause is not an absolute bar to legislative regulation of contracts, the Supreme Court has explained that a sliding scale of sorts is appropriate when assessing whether the impairment of contract violates the contract clause: "The severity of the impairment measures the height of the hurdle the state legislation must clear. Minimal alteration of contractual obligations may end the inquiry at the first stage." *Allied Structural Steel,* 438 U.S. at 245, 98 S.Ct. 2716.

 When the state is not a party to the contract, a court should defer to the legislature's judgment regarding the necessity and reasonableness of the statute, notwithstanding that the statute may impose a financial hardship on the contracting parties. *Hanson,* 200 F.Supp.2d at 1018 (citing *Chi. Bd. of Realtors, Inc. v. City of Chi.,* 819 F.2d 732, 737 (7th Cir.1987)). Additionally, courts should consider whether the statute in question touches on an area that has historically been regulated by the legislature; if so, the statute is less likely to be found to violate the contract clause. *Allied Structural Steel,* 438 U.S. at 249, 98 S.Ct. 2716.

### B. Named Beneficiaries' Impairment of Contract Claims

 As the named beneficiary to the contracts at issue, neither DeWitt nor Fasi are parties to the contract. They are merely third-party beneficiaries to the contract, the parties to which are the insurer and the decedent-insured. *See, e.g., Wise,* 148 Colo. at 581, 367 P.2d at 350. As such, both fail to satisfy the threshold requirement of a contract clause claim, namely that there is a contractual relationship. *Romein,* 503 U.S. at 186, 112 S.Ct. 1105. Accordingly, we reject their claim that section 15–11–804(2) violates the state and federal contract clause as to them as purported beneficiaries. *See, e.g., Mearns v. Scharbach,* 103 Wash.App. 498, 12 P.3d 1048, 1054–55 (2000)(holding, when addressing a statute similar to section 15–11–804(2), that "a surviving spouse has no impairment of contract claim arising out of his or her contingent interest as a beneficiary to an insurance contract"); *Dobert,* 963 P.2d at 332 (holding that a statute similar to section 15–11–804(2) did not impair the contract right of the purported beneficiary because she did not have a contractual relationship with the insurer based on the fact that she "was not a party to the insurance contract" and because of the "absence of any vested right or obligation owed to her" under the contract).

### C. Decedents' Impairment of Contract Claims

 The named beneficiaries contend that the state and federal contract clauses are violated vis-à-vis the decedents if section 15–11–804(2) is applied retroactively. We disagree. Accordingly, we reject the *Becker* court's reliance on *Whirlpool Corp.,* 929 F.2d 1318.[5]

Application of the three-prong contract clause inquiry reveals that section 15–11–804(2) does not unconstitutionally impair the contracts at issue in these cases. The first inquiry, whether there is a contractual relationship, is clearly met: Each decedent was a party to the insurance contract at issue. As discussed below, however, we find that the second inquiry, whether the contractual relationship between the decedent and the insurer was impaired, is not met in this case. We thus need not reach the third inquiry of whether the impairment was substantial.

 We base our conclusion on the unique nature of a life insurance policy. More specifically, and importantly, a life insurance contract, as a third-party beneficiary contract, is a mixture of contract and donative transfer. *See, e.g., Baekgaard v. Carreiro,* 237 F.2d 459, 464 (9th Cir.1956) (" 'the beneficiary clause of a life insurance policy in which the insured has reserved the right to change beneficiaries is donative and testamentary in character' ")(quoting *Beck v. W. Coast Life Ins. Co.,* 38 Cal.2d 643, 647, 241 P.2d 544 (1952)). This distinction was stressed by the Joint Editorial Board (JEB) for the Uniform Probate Code in its criticism of the *Whirlpool* decision. The JEB stated:

> A life insurance contract is a third party beneficiary contract. As such, it is a mixture of contract and donative transfer. The Contracts Clause of the federal constitution appropriately applies to protect against legislative interference with the contractual component of the policy. In [*Whirlpool* ] and comparable cases, there is

---

5. The *Whirlpool* court held that a statute similar to section 15–11–804(2) was unconstitutional because it impaired the decedent's contract with the insurer. *Whirlpool,* 929 F.2d at 1322. More specifically, the *Whirlpool* court held that the

impairment of contract was substantial and that the legislative purposes behind the statute were not reasonable and appropriate to permit interference with the decedent's contract with the insurer. *Id.* at 1322–23.

never a suggestion that the insurance company can escape paying the policy proceeds that are due under the contract. . . . The divorce statute affects only the donative transfer, the component of the policy that raises no Contracts Clause issue.

JEB Statement Regarding the Constitutionality of Changes in Default Rules as Applied to Pre–Existing Documents, 17 Am. Coll. Tr. & Est. Couns. 184 app. II (1991). We accept the intent of the drafters of a uniform law as that of the general assembly. *See, e.g., Copper Mountain, Inc. v. Poma of Am., Inc.*, 890 P.2d 100, 106 (Colo.1995). Additionally, the general assembly has directed that comments appearing with the UPC are helpful in understanding our probate code, which is an adaptation of the UPC. *See* Editor's Note, § 15–10–101, 5 C.R.S. (2001). We thus agree with the distinction articulated by the JEB. Accordingly, because section 15–11–804(2) only addresses the donative aspect of the insurance contract, it cannot be said that the contract between the decedents and the insurance companies are impaired.

Our conclusion that the contract is not impaired is further supported when we consider the contractual, as opposed to the donative, aspect of the insurance contract. More specifically, none of the contractual obligations is implicated by application of section 15–11–804(2). The insurance contract remains in effect and enforceable notwithstanding the application of section 15–11–804(2): During his life, each decedent was required to pay the premiums and upon the decedent's death the insurer was obligated to pay the proceeds of the policy. Section 15–11–804(2) merely changed the identity of the presumptive beneficiary. *See Hanson*, 200 F.Supp.2d at 1020. As a result, "the essential elements of the bargained-for exchange remain intact." *Id.*

Further, the change in the law was foreseeable, given that the insurance industry, as well as the transfer of assets upon death, are both highly regulated by statute in Colorado. *See, e.g.*, § 10–3–101 *et seq.*, 3 C.R.S. (2001); § 15–10–102 *et seq.*, 5 C.R.S. (2001); § 15–11–101 *et seq.*, 5 C.R.S (2001). This factor is an important one in assessing a contract clause claim. *See Allied Structural Steel*,

438 U.S. at 249, 98 S.Ct. 2716; *see also Hanson*, 200 F.Supp.2d at 1020.

Finally, section 15–11–804(2) merely creates a default rule. It did not prevent either decedent from maintaining his former spouse as his designated beneficiary under the contract. Instead, each decedent merely needed to comply with the statute to maintain that designation. *See* § 15–11–804(2). As such, it cannot be said that the statute impairs the contract between the decedents and the insurers. *See, e.g., Hanson*, 200 F.Supp.2d at 1020.

Accordingly, we find that section 15–11–804(2) does not violate the contract clause of either the Colorado or United States Constitutions. We recognize that there is a split of authority on this issue not only in our court of appeals but in other jurisdictions. For the reasons cited herein, we find the position of the JEB and the courts that have upheld the constitutionality of statutes substantially similar to section 15–11–802(4) to be better reasoned and thus follow them. *See Hanson*, 200 F.Supp.2d at 1019; *Dobert*, 963 P.2d at 332; *Mearns*, 12 P.3d at 1054–55. As a result, we do not agree with those courts that have held these statutes to be unconstitutional as violative of the contract clause. *See Whirlpool*, 929 F.2d at 1322–23; *First Nat'l Bank & Tr. Co. v. Coppin*, 827 P.2d 180, 181–82 (Okla.Ct.App.1992) (relying on *Whirlpool*); *see also Aetna Life Ins. Co. v. Schilling*, 67 Ohio St.3d 164, 616 N.E.2d 893, 895–96 (1993); *Parsonese v. Midland Nat'l Ins. Co.*, 550 Pa. 423, 706 A.2d 814, 819 (1998) (relying on *Schilling*).

## IV. Conclusion

We hold that section 15–11–804(2) may be applied retroactively to revoke revocable rights granted during a marriage that dissolved before the statute became effective and where the insured ex-spouse died after that effective date. In reaching this decision, we find that the retroactive application of the statute is not retrospective vis-à-vis the purported beneficiaries or the decedents. Additionally, we hold that the retrospective application of section 15–11–804(2) does not unconstitutionally impair the contract rights of either the purported beneficiaries or the

decedents. As a result, we affirm the court of appeals' decision in *Fasi v. Becker*. We reverse the court of appeals' decision in *Hill v. DeWitt*, with directions for that court to return the case to the trial court for further proceedings consistent with this opinion.