FILED
United States Court of Appeals
Tenth Circuit

December 17, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

KENT D. MENGE,

      Plaintiff - Appellant,

v.

AT&T, INC., a Delaware corporation;
AT&T UMBRELLA BENEFIT PLAN
NO. 1; AT&T OPERATIONS, INC.,
a Delaware corporation; THE AT&T
DISABILITY INCOME PROGRAM,

      Defendants - Appellees.

No. 14-1210
(D.C. No. 1:11-CV-00728-PAB-KLM)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **BACHARACH**, and **McHUGH**, Circuit Judges.

Kent D. Menge appeals pro se from a district court order that upheld the denial

of his claim for short-term disability benefits under the Employee Retirement Income

Security Act (ERISA). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## BACKGROUND

Mr. Menge began working for AT&T in April 2007 as an account manager. His "core responsibilities [were] to answer calls and emails from his [assigned] customers," and he was required to "develop[ ] and appl[y] knowledge of the clients['] business drivers and goals and [create] innovative solutions to address the customers['] need[s]." R., Vol. I at 73, 74.

As an AT&T employee, Mr. Menge was covered by the company's Umbrella Benefit Plan No. 1. That plan includes a Disability Income Program (DIP), which provides short-term disability benefits, here, for twenty-six weeks, when an employee is "unable to perform all of the essential functions of [the] job or another available job assigned by [AT&T] with the same full-time or part-time classification for which [the employee is] qualified." *Id.* at 315.

Although AT&T funds and administers the DIP, it has delegated its claims administration responsibilities to Sedgwick Claims Management Services. To fulfill its responsibilities, Sedgwick operates an Integrated Disability Service Center (IDSC) and a Quality Review Unit (QRU). AT&T gives Sedgwick "sole discretion to interpret the [DIP]" and it insulates Sedgwick's coverage and benefits determinations from attack unless they are arbitrary and capricious. *Id.* at 347.

On September 26, 2007, Mr. Menge was driving his car into the AT&T parking lot, when he was rear-ended by another vehicle. He suffered a mild

concussion and he developed neck pain.  He underwent physical therapy for several weeks but discontinued it in November 2007.

In January 2008, Mr. Menge saw his primary-care physician, Kari Kearns, M.D., for depression, insomnia and anxiety.  He also submitted a short-term disability claim under the DIP, as directed by his supervisor.  The IDSC denied his claim, and Mr. Menge returned to work in early February 2008.  The QRU subsequently denied Mr. Menge's appeal, citing a progress note by Dr. Kearns indicating that Mr. Menge was "overall feeling much better" and that his depression was "slowly improving."  *Id.*, Vol. VII at 140.

Mr. Menge began seeing Evan Katz, D.C., for continuing neck pain.  Dr. Katz opined that Mr. Menge "had a loss of cervical lordosis," "facet injury," and a "slight disc bulge with some disc herniation in [the] low back, which [would] cause some significant pain with radicular-type symptoms."  *Id.* at 619.  Orthopedist Elizabeth Yurth, M.D., evaluated Mr. Menge and found cervical inflammation with pain, in addition to concentration and memory deficits, headaches, and "probable mild traumatic brain injury."  *Id.* at 410.

In April 2008, Mr. Menge submitted another claim for short-term disability benefits.  The IDSC granted the claim, but for only a one-month period:  April 18, 2008, through May 18, 2008.  In denying benefits subsequent to that period, the IDSC stated that it had reviewed medical records from Drs. Kearns, Katz, and Yurth, and despite the presence of depression, "some suicidal ideations," "distracted and

delayed response[s] to questions," "mild disc protrusion at C5-6," and "capsular distention [of the facet joints] at C3-4, C4-5, and C5-6," there was no data or documentation showing "significant emotional or cognitive deficits" or physical limitations that would preclude the performance of Mr. Menge's job duties. *Id.* at 464.

When his disability benefits expired, Mr. Menge took unpaid leave under the Family and Medical Leave Act until July 10. He notified AT&T that he would be unable to return to his job, and he then utilized vacation and personal days for the remainder of the month. AT&T responded, granting him the opportunity at full salary and benefits to search for another job until September 14, 2008. Mr. Menge was unable to find a new position, and he was terminated on September 15, 2008.

Mr. Menge continued consulting with various medical professionals. His psychiatrist, Dr. Frederick Sakamoto, proffered an additional diagnosis of bipolar disorder. He recommended that Mr. Menge not work due to problems with "memory, concentration, focusing, depression, [and] anxiety." *Id.* at 452. But Dr. Sakamoto noted improvements in Mr. Menge's mood and anxiety during July and August 2008 visits, and he later questioned whether Mr. Menge may have exaggerated answers to cognitive questions.

Mr. Menge also saw neuropsychologist Mark Zacharewicz, Ph.D., who opined that Mr. Menge was "experiencing symptoms consistent with a persistent post concussion syndrome and associated psychological adjustment issues." *Id.* at 642.

He conducted a four-day neuropsychiatric evaluation of Mr. Menge and concluded that the results "clearly reflect[ed] that he is experiencing very significant levels of psychological distress including significant levels of depression and anxiety." *Id.* at 654-55. Dr. Zacharewicz further noted, however, that during the evaluation Mr. Menge had shown "poor or variable effort" on one day due to family-health problems and that there were some signs of "possible symptom exaggeration." *Id.* at 653, 655. Further, he attributed some of Mr. Menge's neuropsychological difficulties to a medication change, pain, fatigue, psychological issues, and psychosocial issues. In regard to Mr. Menge's ability to work, Dr. Zacharewicz stated that "Mr. Menge's current neuropsychological presentation and his reported physical symptoms strongly indicate that he is currently unable to be reliably employed in most competitive work environments at this time [September 2008]." *Id.* at 656.

In November, Mr. Menge appealed the denial of benefits. The QRU denied the appeal in February 2009, finding that he had not established a qualifying disability for the period of May 19, 2008, through July 10, 2008. In doing so, the QRU reviewed Mr. Menge's medical records from January to October 2008 and obtained the opinions of five independent physician advisors that Mr. Menge was not disabled.

In 2011, represented by counsel, Mr. Menge filed suit against AT&T, the Umbrella Benefit Plan and the DIP concerning the denial of benefits subsequent to

- 5 -

May 18, 2008.  The district court reviewed the QRU's decision and concluded that the decision was not arbitrary and capricious.

## DISCUSSION

### I. Standards of Review

"We review a plan administrator's decision to deny benefits to a claimant, as opposed to reviewing the district court's ruling." *Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009).  Because AT&T granted a third party, Sedgwick, discretion to determine benefits eligibility and to construe the terms of the DIP, we review the decision denying Mr. Menge benefits to determine only if it was arbitrary and capricious.  *See Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151, 1157 (10th Cir. 2010).  Under that standard, "there is no requirement that the basis relied upon be the only logical one or even the superlative one." *Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1134 (10th Cir. 2011) (internal quotation marks omitted).  Rather, the decision need only be "reasonable and made in good faith." *Id.* at 1133 (internal quotation marks omitted).

In deciding whether the decision to deny Mr. Menge benefits was arbitrary and capricious, we must also take into account the fact that AT&T both funds and administers the plan.  *See Cardoza v. United of Omaha Life Ins. Co.*, 708 F.3d 1196, 1202 (10th Cir. 2013).  But such an inherent conflict of interest has little bearing in this case, given that (1) the QRU relied on the medical opinions of independent physician advisors in upholding the denial of benefits, and (2) the QRU was operated

by Sedgwick, rather than AT&T. *See Holcomb*, 578 F.3d at 1193 (giving limited weight to conflict of interest because plan administrator sought independent examination of claimant and independent review of her records); *Eugene S.*, 663 F.3d at 1133 (observing that when "an insurer delegates its authority to review claims to an independent third-party plan administrator[,] [s]uch a delegation can mitigate what otherwise would be a dual-role conflict of interest").[1]

## II. Denial of Short-Term Disability Benefits

Mr. Menge challenges the benefits decision on a number of grounds. First, he claims that the neuropsychologist and the physiatrist who reviewed his case "submit[ed] [in]accurate statements on [his] physical and mental conditions" because they tried, but were unable, to teleconference with Dr. Yurth and Dr. Zacharewicz. Aplt. Opening Br. at 3. But Mr. Menge fails to indicate how a teleconference would have provided information different than what the independent physician advisors reported following their review of his medical records. Further, a plan administrator may reasonably rely on the opinions of its own doctors who have reviewed the

---

[1]     To the extent Mr. Menge argues that he is entitled to a de novo standard of review based on Colo. Rev. Stat. § 10-3-1116(3), he is mistaken. Although that statute requires Colorado issued disability-benefit plans to include a de novo review provision, the statute was enacted in August 2008—sixteen months after Mr. Menge's coverage began. Thus, even if the statute encompasses plans like AT&T's Umbrella Benefit Plan, the statute is not retroactive. *See McClenahan v. Metro. Life Ins. Co.*, 416 F. App'x 693, 696 (10th Cir. 2011); *Mustain-Wood v. Nw. Mut. Life Ins. Co.*, 938 F. Supp. 2d 1081, 1084-85 (D. Colo. 2013). Because we conclude that the statute is inapplicable here, we need not decide whether it is preempted by ERISA.

claimant's medical file but not consulted with the claimant's treating physicians. *Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 577 (7th Cir. 2006).

Next, Mr. Menge argues that in other contexts he has been found disabled "based upon the same medical records." Aplt. Opening Br. at 3. Specifically, he points out that the Social Security Administration awarded him disability-insurance benefits and that the Department of Education discharged his student loan due to disability. He also states that he obtained a personal-injury settlement for the injuries he suffered in the car accident.

But Mr. Menge's social-security award did not occur until ten months after the QRU denied his appeal. Thus, the award could not even have been considered by the QRU as evidence of a disability under the DIP. Mr. Menge does not indicate when he received the personal-injury settlement or when the Department of Education discharged his student loan, and, based on our review of the administrative record, those matters are absent from the record. "[I]n reviewing a plan administrator's decision under the arbitrary and capricious standard, the federal courts are limited to the administrative record." *Murphy*, 619 F.3d at 1157 (internal quotation marks omitted).

Mr. Menge also contends that the benefits denial is arbitrary and capricious because the QRU "did not obtain a release or 'return to work' statements from any of [his] medical providers," and instead, it relied on the opinions of the independent physician advisors. Aplt. Opening Br. at 7. But ERISA does not require plan

- 8 -

"administrators automatically to accord special weight to the opinions of a claimant's physician[s]." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). Indeed, plan administrators may, without explanation, "credit reliable evidence that conflicts with a treating physician's evaluation." *Id.*

Next, Mr. Menge maintains he was denied "a full and fair assessment of [his disability] claims" because the independent physician advisors "cherry picked" information in his medical records to find him not disabled. Aplt. Opening Br. at 7. Granted, an administrator can act arbitrarily and capriciously by selectively reviewing the administrative record in order to justify a decision to deny benefits. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 118 (2008). But that did not happen here.

Specifically, the internal-medicine advisor acknowledged Mr. Menge's anxiety, neck pain, and concentration difficulties, but concluded that they were insufficient "from an internal medicine standpoint to disable [him]." R., Vol. VII at 696. The neuropsychologist advisor extensively recounted Mr. Menge's medical history and Dr. Zacharewicz's test results, but observed, as did Dr. Zacharewicz, that Mr. Menge's neuropsychological difficulties were partially attributable to medication changes, pain, fatigue, psychological issues, and psychosocial stresses, and that there were effort problems and symptom exaggeration during testing. The psychiatrist advisor noted Mr. Menge's depression, anxiety, head injury, and suicidal ideation, but he questioned the severity of those conditions given the evidence of symptom

- 9 -

exaggeration, which was echoed by Dr. Sakamoto during a teleconference. The chiropractor advisor recognized Mr. Menge's neck pain, loss of cervical lordosis, and muscle spasms, but concluded, based on Dr. Katz's examination data, that Mr. Menge was suffering from no more than "a moderate strain/sprain." *Id.* at 708. Finally, the physiatrist advisor referenced Mr. Menge's cervical and lumbar spine issues and his head injury, but he found no "specific diagnosis anatomically to explain" Mr. Menge's reports of pain. *Id.* at 719.

We cannot conclude that the independent physician advisors selectively reviewed Mr. Menge's medical records so as to render the denial of benefits arbitrary and capricious. An administrator's decision to deny benefits need not be the most logical decision available. *Nance v. Sun Life Assurance Co.*, 294 F.3d 1263, 1269 (10th Cir. 2002). So long as the decision "falls somewhere on a continuum of reasonableness—even if on the low end"—we cannot disturb it. *Id.* Because the QRU's denial of Mr. Menge's short-term disability benefits was a reasonable decision, it must stand.[2]

---

[2] Mr. Menge's request that AT&T be ordered to pay long-term benefits is not properly preserved in this court, as he has included no argument that long-term benefits were arbitrarily and capriciously withheld. *See Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived."). And even without waiver, we note that under AT&T's DIP, long-term disability benefits are available only if the claimant has "[r]eceived the [m]aximum [d]uration of [s]hort-[t]erm [d]isability [b]enefits"—here, twenty-six weeks. R., Vol. I at 325. Because we conclude that Mr. Menge was not arbitrarily and capriciously denied short-term benefits, any argument in support of long-term benefits would necessarily fail.

## CONCLUSION

The judgment of the district court is affirmed.  Mr. Menge's motion for leave to proceed in forma pauperis is granted.  Mr. Menge's request for appointed appellate counsel is denied.  AT&T's motion to submit its answer brief under seal, which was provisionally granted on September 3, 2014, is hereby permanently granted.  We note too that on August 5, 2014, this court ordered that Volume VII of the Record remain sealed.

Entered for the Court


Carolyn B. McHugh
Circuit Judge